THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LOUISE LO VECCHIO, PAUL LEWENBERGER, ELEANOR JAQUAYS and RITA LERCH, Defendants.

City Court of Utica, Sitting as Court of Special Sessions, June 11, 1945.

*Leo O. Coupe, Corporation Counsel* (*William Andrushin* of counsel), for plaintiff.

*Hayden Covington* for defendants.

WALSH, J. This is a series of four cases involving members of the sect known as Jehovah's Witnesses, which were tried together before me without a jury. Each defendant is charged with violating subdivision 3 of section 722 of the Penal Law (disorderly conduct) by refusing to move along when ordered to do so by a police officer of the City of Utica.

The essential facts in each case are not in dispute.

Defendant Lo Vecchio stood in front of Woolworth's store on Genesee Street in the city of Utica on Saturday afternoon, February 17, 1945, at about 1:50 P.M. The sidewalk in front of this store is approximately seventeen feet and three inches wide and defendant stood alone approximately two and one-half

feet inside the curb line in front of the south entrance of the store displaying a pamphlet of the sect. The police officer, who had orders to keep people moving on Genesee Street, testified that this portion of the street is an extremely busy one on Saturday afternoon. The officer observed defendant standing in one spot for a period of five minutes and that occasionally a pedestrian was required to stop and wait a moment for traffic to clear in order to get around the defendant. He further testified that although she was not offensive in any way nor did she annoy pedestrians or cause a crowd to collect, he requested her to keep moving. To this request, defendant replied that she would not move and demanded to see any authority for the officer's request. She was thereupon arrested.

In the Lewenberger case, defendant stood in front of Liggett's drug store on Genesee Street on Saturday evening, February 17, 1945, at about 8:40 P.M. The sidewalk in front of this store is approximately the same width as in the Lo Vecchio case (seventeen feet). The defendant stood alone approximately in the middle of the sidewalk handing out pamphlets announcing the meeting of the sect to pedestrians as they passed by. The police officer who made this arrest had orders likewise to keep people moving on Genesee Street. He testified that there was quite a crowd of people on the street at the time, some with packages and others with baby carriages. He observed defendant for four or five minutes standing in one spot. The police officer approached defendant and requested him to walk up and down and not remain in one spot. Defendant refused to move and testified on the trial that even if the law required him to move, he would refuse to do so upon the ground that he was doing God's work. After this first refusal to move, the officer turned away and spoke to a street railway inspector for a few minutes. Upon looking back again, he observed defendant still standing in the same spot and promptly arrested him. The officer testified that it was necessary for people to walk around defendant in order to get by but that defendant did not speak to anyone or say anything and no crowd collected around him.

In the Jaquays and Lerch cases, the defendants stood together in front of Kresge's store on Genesee Street on Saturday afternoon, February 24, 1945, about 4:30 P.M. The sidewalk in front of this store is approximately the same width as in the other cases (seventeen feet). The defendants stood approximately three feet inside the curb line just north of the crosswalk at the intersection of Genesee and Elizabeth Streets, about ten

feet from the main entrance of Kresge's store. The police officer testified that Saturday afternoon is a busy one at this portion of the street and that there were a large number of people on the street, many carrying bundles; that he observed the defendants standing close together for a period of five or six minutes and that he and another officer went up to defendants and asked them to move, to which they replied that they wouldn't move for the officers since they were ministers. The officer testified that the defendants were not "fresh" and there is no evidence that a crowd collected at any time.

Subdivision 3 of section 722 of the Penal Law provides that "Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, * * * Congregates with others on a public street and refuses to move on when ordered by the police" commits the offense of disorderly conduct.

The courts of this State and of the United States have sanctioned the right of Jehovah's Witnesses to try to convert those of different religious beliefs. To that end, they have invalidated ordinances prohibiting the distribution of literature (*People* v. *Barber,* 289 N. Y. 378; *Lovell* v. *Griffin,* 303 U. S. 444; *Schneider* v. *State,* 308 U. S. 147; *Murdock* v. *Pennsylvania,* 319 U. S. 105; *Martin* v. *Struthers,* 319 U. S. 141); they have permitted parading without a license (*People* v. *Kiernan,* 26 N. Y. S. 2d 291); and they have reversed convictions for disorderly conduct even where there has been persistent, inconsiderate and offensive disrespect for the right of privacy (*Cantwell* v. *Connecticut,* 310 U. S. 296; *People* v. *Ludovici,* 13 N. Y. S. 2d 88; *People* v. *Guthrie,* 26 N. Y. S. 2d 289; *People* v. *Reid,* 180 Misc. 289).

The City Court of Utica with proper regard for preserving to every person and group complete religious freedom and due process of law has followed the judicial authority of the State and Federal courts. (*People* v. *Dale,* 47 N. Y. S. 2d 702; *People* v. *Leiby,* 184 Misc. 21.)

None of these decisions should be construed as granting limitless and boundless freedom to any individual to decide for himself whether or not he will obey any particular law. If rights become thus inflated, they become privileges which, in their turn, destroy other rights of equal value. (*People* v. *Passafume,* 22 N. Y. S. 2d 785.) When freedom of religion is denied to any one person, freedom of religion everywhere is in jeopardy but by the same token, whenever any one person declares that he or she will be the sole judge of whether or

not the law will be respected and obeyed, anarchy has found its roots in a nation dedicated to lawful authority.

Mere disobedience to a police officer is not always an offense punishable by law, any more than his command is always the law (*People* v. *Arko,* 199 N. Y. S. 402), but a police officer is the guardian of the public order (*People* v. *Nixon,* 248 N. Y. 182) and the courts cannot weight opposing considerations as to the police officer's order when he is called upon to decide under given circumstances that the time has come when an order is called for. (*People* v. *Friedman,* 14 N. Y. S. 2d 389, 392, 393.) '' Reasonable discretion must, in such matters be left to the police, and only when they abuse or exceed that discretion do they transcend their authority and depart from that duty.''

In the instant cases, due respect for law and lawful authority should have prompted defendants to obey the officer's directions which were not arbitrary or capricious, and were not designed to interfere with the distribution of religious literature or the practice of religion (see Religious Persecutions under Guise of Law, 17 Ind. L. J., pp. 435, 437) but to facilitate the flow of pedestrian traffic.

The order of the police officers having been reasonable, was defendants' refusal to obey such order a violation of law?

The People rely upon the case of *People* v. *Hussock* (23 N. Y. S. 2d 520, certiorari denied *sub nom. Hussock* v. *New York,* 312 U. S. 659) wherein defendant, a member of Jehovah's Witnesses was convicted of violating subdivision 3 of section 722 under an information which charged that defendant '' at about 7:45 P.M. this date while selling magazines, caused a crowd to collect, and refused to move on when ordered by the deponent '', a police officer.

There, as here, defendant argued that section 722 was unconstitutional in that it deprived him of his liberty of worship, freedom of speech and of the press and his liberty of assembly and that it was invalid in that it vests arbitrary and discriminatory power in the police. In that case, the appellate court disregarded such contention, saying that '' most rights under the law are relative and must be exercised with reference to the public weal.''

I concur with the last statement of law, but I cannot follow the ruling in *People* v. *Hussock* (*supra*) for the reason that the facts in that case are distinguishable from the one at bar. There, the record disclosed a large crowd gathered around defendant.

Under subdivision 3 of section 722 the "refusal to move" must be coupled with a "congregating with others". The word "congregate" implies the joint action of two or more persons. A person cannot "congregate" at any given time or place without the co-operation of someone else. (*Powell* v. *The State*, 62 Ind. 531, 532.) The testimony in the Lo Vecchio and Lewenberger cases definitely establishes that each defendant was standing alone, each at a different time and location and no crowd collected. In the Lerch and Jaquays cases, the two defendants stood together but no crowd collected.

In several cases, convictions were sustained where there was evidence of a crowd and a refusal to move on. (*People* v. *Bogin*, 248 N. Y. 530 — large group; *People* v. *Galpern*, 259 N. Y. 279 — number of persons; *People* v. *Hipple*, 263 N. Y. 242 — congregation of persons; *People* v. *Friedman*, 14 N. Y. S. 2d 389, *supra* — crowd; *People* v. *Hussock*, 23 N. Y. S. 2d 520, certiorari denied *sub nom. Hussock* v. *New York*, 312 U. S. 659, *supra* — crowd.)

*People* v. *Nixon* (248 N. Y. 182), *People* v. *Friedman* (248 N. Y. 531, cited by defendants) and *People* v. *De Cecca* (29 N. Y. S. 2d 524) are not in point. In each case, although there was evidence of a crowd, convictions were reversed because there was no direction by the police to move on. Here, each defendant was ordered to move on and given an opportunity to comply before the arrest was made.

It is clear that defendants may not be convicted of violating subdivision 3 of section 722 for the reason that in none of the four cases before me was there a "congregating with others" which implies the assembling of at least three persons at a given time and place.

The remaining question to be decided is whether defendants or any of them may be convicted of violating section 722 in any of the remaining subdivisions. In *People* v. *Hipple* (263 N. Y. 242, *supra*) the court held that although defendant did not offend under subdivision 3 because he was not on a public street, his refusal to move under the other circumstances in the case was sufficient to sustain a violation of subdivision 2 of section 722. However, in that case, there was evidence of a "congregating" which is not present here.

Here, there is absolutely no evidence of any annoyance to pedestrians, noise, or other disorderly acts, language or conduct. True, certain pedestrians were required to pause and remain a moment before being able to pass by the defendants but no protests were made by any of them. "Even a protest

from pedestrians who were annoyed by the defendant's conduct might be a significant element in determining whether persistence in such conduct was wrongful '' and justify a conviction upon the finding that defendants acted recklessly of the rights and convenience of others, and that their conduct tended to a breach of the peace. (*People* v. *Nixon*, 248 N. Y. 182, 188, 189, *supra.*) Since there is no evidence of any protests by pedestrians, I find no grounds upon which defendants could be found to have breached the peace nor that there was any conduct or act which tended to such a breach.

Defendants are found not guilty and the informations are dismissed and the defendants discharged.