Arthur **KINOY**, Appellant,

v.

**DISTRICT OF COLUMBIA**, Appellee.

No. 21262.

United States Court of Appeals District of Columbia Circuit.

Argued July 1, 1968.

Decided July 29, 1968.

Mr. Anthony G. Amsterdam, Philadelphia, Pa., with whom Messrs. Morton Stavis, Newark, N. J., and Philip J. Hirschkop, Alexandria, Va., were on the brief, for appellant.

Mr. Ted D. Kuemmerling, Assistant Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellee.

Mr. David Rein, Washington, D. C., filed a brief on behalf of National Lawyers Guild, as amicus curiae, urging reversal.

Messrs. William M. Kunstler, New York City, and Joseph Forer, Washington, D. C., filed a brief as amicus curiae, urging reversal.

Messrs. Robert F. Drinan, Robert B. McKay and Wm. Warfield Ross, et al., filed a brief as amicus curiae, urging reversal.

Before DANAHER, WRIGHT and ROBINSON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

Appellant was convicted after a trial without a jury in the District of Columbia Court of General Sessions of disorderly conduct purportedly in violation of 22 D.C.Code § 1107 (1967). His conviction was affirmed by the District of Columbia Court of Appeals in a *per curiam* opinion and this court granted leave to appeal.

I

The charge of disorderly conduct relates to appellant's activities on August 17, 1966, before a subcommittee of the House Committee on Un-American Activities. Appellant was present in the hearing room that day for the purpose of representing two of his clients who had been subpoenaed to appear as witnesses. During the testimony of another witness, a so-called friendly (to the Committee) witness, the name of one of these clients was mentioned. Appellant rose from his seat and approached the rostrum

from which other lawyers voicing objections had addressed the subcommittee. With Chairman Pool's acquiescence appellant began his legal argument, but within a very short period of time the two men were involved in a heated exchange. Voices were raised, others began to enter the debate and even the audience started to get into the spirit of the thing. Chairman Pool then ordered appellant to be seated: "Now sit down. Go over there and sit down. You have made your objection. You are not going to disrupt this hearing any further."

At this point, two of the United States Deputy Marshals stationed in the hearing room began to move toward appellant and, when appellant started to speak again,[1] Chairman Pool, without consulting the other members of the subcommittee, ordered the marshals to "Remove the lawyer." Appellant responded: "Mr. Chairman, I will not be taken from this room. I am an attorney-at-law and I have the right to be heard." The marshals then physically ejected appellant from the hearing room.

Appellant's co-counsel immediately pressed for his return. Chairman Pool apparently had no objection and, in fact, at one point explicitly stated, "Bring the gentleman back in." Unfortunately, by this time the marshals had not only taken appellant out of the hearing room and placed him under arrest,[2] but they had transported him, kicking and screaming, through the halls, down the elevator and into a waiting police wagon.

In the trial court, the DCCA and this court, appellant has attacked this prosecution with a battery of legal and policy arguments. He has contended that he had simply been functioning as a lawyer vigorously and persistently defending his client's interest and that a prosecution for disorderly conduct based on such activity infringed upon both the First and Sixth Amendments; that if his actions were disruptive of the subcommittee's proceedings, the proper means of prosecution is for that body to initiate or prosecute for contempt and not for a different tribunal to hear and adjudge the matter as an ordinary criminal proceeding; that the trial court entertained an erroneous view of the intent requisite to establish guilt; that each and every element of the crime of which he was convicted was not charged or proved; and that not only was the information defective in that it failed to charge a specific offense, but the entire prosecution was tainted by the uncertainty as to which statute was the basis for his conviction. Since we are in agreement with some of these contentions, we reverse appellant's conviction.

## II

At the outset, we wish to make it clear that, although a lawyer has a duty to defend vigorously the rights of his clients,[3] there is a corollary obliga-

---

1. The transcript of the proceedings before the subcommittee indicates that appellant stated: "Mr. Chairman, let the record show—don't touch a lawyer. Mr. Chairman—." Appellant testified at trial that he had intended to say only "Let the record show that our legal argument has been cut off," and that the statement "don't touch a lawyer" was in response to his being handled by one of the marshals. Officer Bird testified that he had "touched him rather lightly but with enough pressure to let him know I was there * * *." It is clear that this touching was not authorized by any member of the subcommittee but rather was attributable solely to the marshal's own judgment of the situation.

2. Officer Hockman testified that he told the appellant "You're under arrest" shortly after he had applied a "chest and shoulder bar" and when they were about 30 feet off the raised platform, but still well within the hearing room. In addition he testified: "I arrested Attorney Kinoy on his resisting, kicking, loud and boisterous hollering."

3. Canon 15 of the Canons of Professional Ethics provides that a "lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public un-

tion that he conduct himself with decorum.[4] And this is equally true whether he be addressing a court or a legislative committee. In neither instance may he so conduct himself that he disrupts the proceedings and obstructs the orderly administration of the law. At the same time, the courts and committees before which a lawyer appears are governed by specific rules of order and just as the lawyer must stay within the boundaries of legitimate legal argument, so too the committee must respect its own rules. Gojack v. United States, 384 U.S. 702, 86 S.Ct. 1689, 16 L.Ed.2d 870 (1966); Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963).

■ In the instant case, Chairman Pool acting alone and without consulting other members of the subcommittee ordered appellant's removal from the hearing room. But Rule VIII of the House Committee on Un-American Activities specifically provides:

"Counsel for a witness shall conduct himself in a professional, ethical and proper manner. His failure to do so shall, *upon a finding to that effect by a majority of the Committee or Subcommittee before which the witness is appearing*, subject such counsel to disciplinary action which may include warning, censure, removal of counsel from the hearing room, or a recommen-

dation of contempt proceedings." (Emphasis added.)

Although the discipline initiated was within the scope of the rule, the procedure leading to such discipline clearly was not.[5] Given the absence of a finding by a majority of the subcommittee that appellant's behavior extended beyond legitimate legal argument, we cannot say that appellant's removal from the hearing room was a lawful application of the subcommittee's rules. Gojack v. United States, *supra*.

■ In light of the unusual situation presented by this case, we think it appropriate to make an additional preliminary observation: Where a participant in a legislative hearing behaves in such a manner as to raise a question as to the propriety of his behavior, the *initial* determination that criminal proceedings should be instituted against that party ordinarily lies with the body before which he is appearing, not an independent tribunal. Here we have a case in which the District of Columbia Government, supported only by United States Deputy Marshals, took complete charge in initiating and pursuing appellant's prosecution for activity before a House subcommittee. No member of the subcommittee even testified at the trial.

The trial court in its written opinion denying appellant's motion in arrest of

popularity should restrain him from the full discharge of his duty * * *."

4. *See, e.g.,* opinion of Judge Frank in United States v. Sacher, 2 Cir., 182 F.2d 416, 453 (1950), *affirmed*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952) (contempt proceeding); Jones v. United States, 80 U.S.App.D.C. 109, 151 F.2d 289 (1945) (contempt proceeding).

5. The trial court, in its written opinion denying appellant's motion in arrest of judgment, found that appellant was not entitled to the protection of the rule since he was not "counsel" within the meaning of Rules VII and VIII. Rule VII provides that "the participation of counsel during the course of any hearing and while the witness is testifying shall be limited to advising said witness as to his legal rights." The court concluded that

since the committee's rules "provide no role whatever for one who, as this defendant, represents someone other than the witness on the stand," appellant "had no standing to engage in legal argument in the first place * * *." Without determining whether one representing a subpoenaed witness who is present in the hearing room but not then testifying is permitted to address the committee, we find that the subcommittee did in fact hear counsel for witnesses not presently testifying, thereby establishing a procedure for entertaining their objections. Moreover, a witness for the defense testified that when appellant asked the chairman if he might be heard, the chairman "nodded to give him approval that he might be heard." This testimony was neither disputed nor contradicted by any of the prosecution witnesses.

judgment supports its conclusion that, in a case such as this, prosecution on a straight criminal charge of disorderly conduct is to be preferred over contempt proceedings on the ground that the numerous procedural safeguards attending a criminal prosecution are dispensed with in summary contempt proceedings.[6] However, as appellant has correctly noted, in this case it is highly doubtful that the committee would have initiated a contempt proceeding, since Chairman Pool did attempt to have appellant returned to the hearing room, and even if a contempt proceeding were begun, it seems clear that it would not have met with any success in view of the subcommittee's noncompliance with its own rules. Gojack v. United States, *supra*; Yellin v. United States, *supra*. Surely if the subcommittee itself is unwilling or unable to initiate contempt proceedings, we may observe without deciding that it is difficult to understand how or why an independent tribunal can lawfully proceed. It is unnecessary, however, to pursue the matter; we find that this conviction must be reversed in any event since, in light of the record before us, the information filed against appellant does not charge an offense under the District of Columbia Code.

**6.** The trial court elaborated on this conclusion as follows:

"All the judge needs to do in a contempt matter is to make a finding that the defendant is in contempt, and, after giving him a chance to make an explanation, impose the punishment. Summary contempt (which this would be) dispenses with the usual criminal safeguards of notice or hearing, indictment or information, bill of particulars, jury trial, issuance of process, evidence, or argument. Moreover, the maximum sentence is normally not fixed by the legislature but is within the discretion of the judge."

Appellant, however, forcefully argues that there are both substantive and procedural advantages to a contempt proceeding, the most important of which is that where Congress calls upon the courts to prose-

## III

The information filed against appellant reads as follows:

"that ARTHUR KINOY, late of the District of Columbia aforesaid, on or about the 17th day of August in the A.D., nineteen hundred and sixty-six, in the District of Columbia, aforesaid, and on New Jersey and Independence Street-Avenue, east, and in a public place, to wit: Cannon Building did then and there engage in disorderly conduct, to wit: engage in loud and boisterous talking and other disorderly conduct.

"Contrary to and in violation of an Act of Congress Police Regulation in such case made and provided, and constituting a law of the District of Columbia."

The section of the D.C.Code under which the District Government prosecuted and the trial court apparently [7] found appellant guilty is Section 22–1107 which in pertinent part provides:

"§ 22–1107. *Unlawful assembly— Profane and indecent language.*

It shall not be lawful for any person or persons within the District of Columbia *to congregate and assemble* in any street, avenue, alley, road, or highway, or in or around any public

cute a contempt charge under 2 U.S.C. § 192 (1964), affirmative action by the subcommittee, the full committee and finally by the House (if it is in session) is required. 2 U.S.C. § 194 (1964). *See* Wilson v. United States, 125 U.S.App.D.C. 153, 369 F.2d 198 (1966).

**7.** The trial judge stated, "I am going to find the defendant guilty," without specifying the applicable section of the Code. However, in his opinion denying appellant's motion in arrest of judgment, he cites Section 22–1107, although he also refers to Section 22–3111 and notes that the common law crime of breach of the peace is incorporated in Section 22–1107. The effect of this uncertainty as to the section under which appellant was found guilty is discussed *infra* Note 10 and accompanying text.

building or inclosure, or any park or reservation, or at the entrance of any private building or inclosure, *and engage in loud and boisterous talking or* other disorderly conduct, *or to insult or make* rude or obscene gestures or comments or observations on persons passing by, or in their hearing, *or to* crowd, obstruct, or incommode, the free use of any such street, avenue, alley, road, highway, or any of the foot pavements thereof, or the free entrance into any public or private building or inclosure; * * *." (Emphasis added.) [8]

A comparison of the language of the information with the language of the statute discloses that whereas the crime denounced in the statute is "to congregate and assemble * * * and engage in loud and boisterous talking or other disorderly conduct," the information merely charges appellant with engaging in loud and boisterous talking and other disorderly conduct. It should be noted too that the title of the statute is "Unlawful Assembly."

▓ Appellant argues that the failure to charge him with "congregating and assembling" is fatal to the government's case, and in support of his theory he refers us to an unpublished recent opinion by Judge Tim Murphy in District of Columbia v. Reed, Cr. No. DC 2021–67 (May 11, 1967). *See also* Hunter v. District of Columbia, 47 U.S.App.D.C. 406 (1918). We attach Judge Murphy's

opinion as an appendix to our decision today since we are in substantial agreement with the views expressed therein and, by incorporating it in our decision, we will eliminate the need here for an extended discussion of the relevant principles. We need only note that Judge Murphy begins his opinion with the observation: "The offense [a violation of Section 22–1107] then has two elements: A. That the defendant did congregate and assemble; B. That he did engage in loud and boisterous talking or other disorderly conduct." Judge Murphy then concludes his opinion by holding that, since the information did not charge congregating and assembling nor could such a charge have been proved on the facts of the case, the defendant must necessarily be found not guilty. In the instant case, appellant was not charged with congregating and assembling nor could such a charge have been proved had the government sought and obtained permission to amend the information; whatever groups may be included in the definition of "Unlawful Assembly," a lawyer permitted to represent his clients at a hearing of a House subcommittee is not one of them. Accordingly this conviction must be reversed.

One final comment is in order in view of the record of the proceedings below. In *Reed*, Judge Murphy spoke of "the right to be clearly apprised of a criminal charge," and this court has recently had an opportunity to apply this principle

---

8. Section 22–1107 continues as follows:
"it shall not be lawful for any person or persons to curse, swear, or make use of any profane language or indecent or obscene words, or engage in any disorderly conduct in any street, avenue, alley, road, highway, public park or inclosure, public building, church, or assembly room, or in any other public place, or in any place wherefrom the same may be heard in any street, avenue, alley, road, highway, public park or inclosure, or other building, or in any premises other than those where the offense was committed, under a penalty of not more than $250 or imprisonment for not more than ninety days, or both for each and every such offense."

Admittedly this portion of the section does not require congregating and assembling, but the term "disorderly conduct" must be construed in context and it is obvious that that which is quoted above, *i.e.* everything following the semicolon, relates to the second portion of the title— "Profane and indecent language." *Cf.* Williams v. District of Columbia, 227 A. 2d 60 (D.C.C.A.1967), and cases cited. There is no allegation or proof that appellant used any profanity or indecent or obscene words and hence this portion of Section 22–1107 is clearly inapplicable. The prosecution does not suggest otherwise.

in cases quite similar to our own. Feeley v. District of Columbia, 128 U.S.App. D.C. 258, 387 F.2d 216 (1967); Smith v. District of Columbia, 128 U.S.App. D.C. 275, 387 F.2d 233 (1967). In *Feeley*, where, as here, the information did not explicitly specify the section under which the charge was laid and where, as here, at trial several other disorderly conduct sections were referred to as possible bases for conviction,[9] Judge Prettyman, in reversing Feeley's conviction, held:

"We think that when the participants were arrested and prosecuted they were entitled to know with some precision what law they had allegedly violated. Perhaps this is miniscule, but, when the Congress enacts laws describing criminal offenses in intricate patterns and with apparent variations in details, we think enforcement officers must be correspondingly exact." 128 U.S.App.D.C. at 261–262, 387 F.2d at 219–220.

Unfortunately, the trial judge here did not have the benefit of *Feeley* and *Smith* [10] at the time this case was tried.

Reversed.

# APPENDIX

### DISTRICT OF COLUMBIA COURT OF GENERAL SESSIONS

### CRIMINAL DIVISION

DISTRICT OF COLUMBIA

v.

DONALD HOMER REED

Criminal No. DC 2021-67

## OPINION

On January 19, 1967, Private Anthony Morris of the Metropolitan Police Department arrested Donald Reed for double-parking and disorderly conduct. The case was tried by the Court on January 29, 1967. The defendant was charged in the disorderly case as follows:

Donald H. Reed, late of the District of Columbia aforesaid, on or about the 15th day of January, in the year A.D., nineteen hundred and sixty-seven, in

---

9. The prosecutor, in his closing argument to the court, stated:

"These marshals took him out and rightly charged him with being disorderly under Section 22–1107.

"Now, he refers to the words that were used in so far as the charge is concerned. That's exactly the language of 22–1107."

But then the prosecutor added:

"The other one he could be charged under would be 22–1121, and 22–1121 has to do with breach of the peace."

As noted earlier, *see* Note 7 *supra*, the trial judge relied primarily upon Section 22–1107, but did refer to the "common law concept breach of the peace" and

Section 22–3111 (which had never been mentioned during the trial itself). And now, in this court the government has volunteered the following: "Even if, as appellant asserts, there is no statutory proscription for the type of conduct in which he engaged (except the proscription inherent in contempt), his conduct constituted the common-law offense of 'disturbing a public meeting.'"

10. Taking account of these decisions, Congress has updated D.C.Code 22–3111 in Public Law 90–108, approved October 20, 1967. *See* U.S.Code Cong. and Admin. News, Vol. I, 90th Cong., 1739, 1742, 1744–45.

the District of Columbia aforesaid, and in front of 1930 Fourteenth Street, Northwest, did then and there engage in disorderly conduct, to wit: did engage in loud and boisterous language, and other disorderly conduct, contrary to and in violation of an Act of Congress Police Regulation in such case made and provided, and constituting a law of the District of Columbia.

Prior to trial, defense counsel moved to limit the proof to loud and boisterous talking. After an initial objection, the prosecutor agreed to limit his proof on the disorderly conduct charge to this conduct.

The arresting officer testified he was on patrol in uniform in a marked scout car when he observed the defendant double-parked in the 1900 block of 14th Street, Northwest. There were two parking spaces available to the defendant. He drove up behind the parked car and waited 45 seconds to a minute. When the defendant did not move, he flicked his spotlights into defendant's mirror, waited a while longer, then briefly sounded the siren. The defendant still failed to move or park his car. The police officer moved his car near the rear of defendant's car, got out and approached the defendant and asked for license and registration. The defendant got out of his car and "in a loud and boisterous voice and highly agitated manner," demanded, "What are you doing throwing the spotlight in my face?" When the officer again sought the license and registration, the defendant stated, in a loud and boisterous voice again, "Don't point your finger at me." Upon a third demand, the defendant replied, "I don't give a *damn* what you do, officer." At this point the officer called for a wagon. While waiting for the wagon, the de-

fendant's wife interjected herself into the proceeding, advising the defendant to drive off and accused the police of harassment. When the wagon arrived the defendant held onto the car and was removed forceably and placed in the wagon.

Upon cross-examination and re-direct, the officer stated he had never asked the defendant why he was double-parked or to move his car. He stated some people had gathered on the sidewalk during his initial confrontation with the defendant but no one had complained about the noise, stated they were annoyed or that they thought defendant was loud and boisterous. At the time of the officer's stopping behind the defendant, the traffice was between medium and heavy, and defendant's car definitely obstructed the orderly flow of traffic.

The defendant testified in his own behalf and raised issues of credibility concerning the facts of the disorderly conduct and admitted the double-parking. The Court found the defendant guilty of the double-parking and took the disorderly conduct case under advisement.

After hearing arguments, and studying the memos submitted by counsel, the Court, on April 14, 1967, resolved the credibility issues against the accused, but found the defendant not guilty under the facts and law of this case on the disorderly charge. This opinion is in support of that ruling of April 14, 1967.

CONCLUSIONS OF LAW

The heart of the issue before this Court was whether a defendant who alone becomes loud and boisterous in a face-to-face confrontation with a police officer can be found guilty of disorderly conduct under the first section of 22 D.C.Code 1107.[1] The Court thinks not. The perti-

---

1. The Court need not decide at this time the question of whether a conviction may be sustained under different sections of the disorderly conduct statutes on a failure of proof under the initial section charged. The issue is not before the Court because the prosecutor specifically agreed to limit the case to the "loud and boisterous" section. See the Official Transcript of Proceedings, page 11, recording the following conversation:

Mr. Feuer: I would have no objection at this time to limiting ourselves to "Did engage in loud and boisterous talking."

The Court: All right. So the only thing you have to defend him on the disorderly conduct is "engage in loud and boisterous talking."

nent section of the disorderly statute reads as follows:

> It shall not be lawful for any person or persons within the District of Columbia to congregate and assemble in any street, avenue, alley, road, or highway, or in or around any public building or inclosure, or any park or reservation, or at the entrance of any private building or inclosure, and engage in loud and boisterous talking or other disorderly conduct.

The offense then has two elements:

> A. That the defendant did congregate and assemble;
>
> B. That he did engage in loud and boisterous talking or other disorderly conduct.

Looking at the second element first, the Court finds the defendant was loud and boisterous[2] under the circumstances of this case. However, the Government failed to prove the first element; that is, the defendant did congregate and assemble.

■ A. *Congregating:* On June 7, 1966, the Office of the Corporation Counsel issued an opinion to the Police Department concerning 22 D.C.Code 1121 (2), the so-called "failure to move on" statute. This statute provides:

> Whoever, with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby * * * congregates with others on a public street and refuses to move on when ordered by the police.

In his excellent lengthy opinion, the (Acting) Corporation Counsel stated:

> Additionally, to support a finding of guilt under Code Section 22–1121(2) it must be established that one 'congregates with others on a public street.'

It has been held by some courts that to establish this element of the offense at least three persons must be present. People v. LoVechhio, 185 Misc. 197, 56 N.Y.S.2d 354, 358 (1945); People v. Carcel, 3 N.Y.2d 327, 165 N.Y.S.2d 113, 144 N.E.2d 81, 65 A.L.R.2d 1145 (1957).

It appears the position urged upon the Court in this case by the Office of the Corporation Counsel is inconsistent with its position of June 10, 1966. This Court agrees with the New York Court that a congregation requires at least three persons; there being only two persons in this case, there was no congregation.

■ B. *Assembling:* At common law, if three or more persons assembled for a purpose which, if executed, would constitute a rout or riot, but separated without carrying out their purpose, it constituted unlawful assembly. Hunter v. District of Columbia, 47 App.D.C. 406 (1918). Since there were only two persons at the most assembled under the circumstances, there can be no unlawful assembly.[3] The *Hunter* case is squarely on point in this case. The statute in question is identical in language, where pertinent, to 1107, although the facts in that case involved an alleged incommoding of the sidewalk. The defendant was charged in that case as follows:

> "did congregate and assemble on Pennsylvania avenue, N. W., did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue. Contrary to and in violation of an act of Congress in such case made and provided, and constituting a law of the District of Columbia."

---

2. The "other disorderly conduct" found in this element relates to other *like* disorderly conduct, such as screaming, loud singing, clapping, and similar noisy outbursts of sound. Jalbert v. District of Columbia, 221 A.2d 94, 96 (D.C.App. 1966).

3. The Court does not need to decide the issue of whether the presence of a number of policemen with the defendant can constitute an assembly, but it would appear not since the above definition requires the persons so assembled to be in concert. *Cf.*, People v. LoVechhio, 185 Misc. 197, 56 N.Y.S.2d 354, 358 (1945).

The Court in reversing this conviction noted:

> It follows, therefore, that at common law the mere act of assembling was not unlawful, unless it was for an unlawful purpose. Neither is a peaceable assembly unlawful under the present statute. It does not condemn the mere act of assembling on the street, but prohibits assembling and congregating, coupled with the doing of the forbidden acts. In other words, at common law the assembly must be for an unlawful purpose, and when three or more persons so assembled the offense was complete without the commission of any additional overt criminal act; but here it requires both the assembly and the commission of one of the acts forbidden by the statute to constitute unlawful assembly. Both the assembling and the overt act are essential to make the offense. It would hardly be contended, therefore, that if defendants had met on one of the spacious sidewalks of Pennsylvania avenue to conduct a peaceable conversation, though in a degree inconveniencing pedestrians, they would be guilty, under the statute, of crowding and obstructing the free use of the walk.

■ Thus, it appears clear that the "congregate and assemble" section of 1107 requires the presence of three or more persons acting in concert for an unlawful purpose.[4] The D.C. statute adds an additional element to common law unlawful assembly. Whereas common law required three or more persons with a common purpose, the statute adds the commission of a forbidden act, e. g. loud and boisterous, as a third element. But to repeat, although the defendant was loud and boisterous he was not with three or more persons with a common purpose and thus not in violation of the statute.

The fact that this case was prosecuted calls for some observations by the Court. Prior to its research for this opinion, the Court was unaware of the *Hunter* decision and while sitting in the D. C. Branch of the Court observed a number of cases brought for prosecution where a lone person was loud and boisterous. Although the *Hunter* case is a most significant case concerning the interpretation of 1107, it is not cited in the annotation of the Code nor has it been cited in subsequent opinions of our appellate courts.[5] The obscurity of the opinion, however, does not diminish its force. There being no evidence it has been overruled, it is the law of this jurisdiction.

Prudence then would suggest that the Office of the Corporation Counsel carefully examine the *Hunter* case and its opinion of June 10, 1966, to determine if its present prosecuting policies are in accord. Further, as legal advisors to the police, it would appear wise for them to, by opinion, notify the police of any change in policy to ensure the man on the beat restricts his arrests under this section of the Code to those where violation occurs—as the terms, congregate and assemble, have been defined.

■ The Court wishes to make a further observation on the information used in this case. First, the information fails to allege "congregate and assemble" even though it is an element of the offense. All elements of the offense charged should be alleged. Secondly, in this case even if there had been an allegation including "congregate and assemble" the information would be defective, as inadequately vague under *Hunter*. The right to be clearly apprised

4. In the *Jalbert* case, *op. cit.*, *supra*, the Court referred to the assembling of the defendants in a context that supports the *Hunter* rationale.

5. Research through Shepard's Federal Reporter Citations reveals that *Hunter* has been cited only in Jamison v. District of Columbia, 47 App.D.C. 411, and Wiley v. District of Columbia, 47 App.D.C. 412 (both decided the same day as *Hunter*), and in two annotations in A.L.R. in discussion of unlawful assembling, 58 A.L.R. 751 and 71 A.L.R.2d 877.

of a criminal charge is constitutional in scope and can not be avoided in this instance by the more simplified rules of modern pleading or the relative obscurity of the *Hunter* opinion.[6]

ORDERED that the defendant is found not guilty of disorderly conduct and discharged on that charge.

Tim Murphy
Judge

May 11, 1967

---

**6.** The requirement that the indictment be a clear statement of the essential elements of the offense effectuates two constitutional provisions: The Sixth Amendment right to be informed of the nature and cause of the accusation in order to prepare one's defense, and the Fifth Amendment protection against being put in jeopardy twice for the same offense. Moore's Federal Practice, Cipes, Rules of Criminal Procedure, pp. 7–14; Rule 6, CGS Criminal Rules.