# Continuing Effect of a Congressional Subpoena Following the Adjournment of Congress

A congressional subpoena lacks present force and effect after the adjournment *sine die* of a Congress, and it therefore imposes no continuing duty to comply with its directives; similarly, it will not support the continued exercise by Congress of the power to punish for contempt.

Judicial construction of the procedure by which a congressional committee's contempt citation is certified for prosecution under 2 U.S.C. § 192 indicates that it would require action by the whole House and not simply the Speaker if the contempt occurs while Congress is in session. Accordingly, if the contempt in this case were not reported to the House while it was still in session, or if the House failed to act on the resolution, the citation would die upon Congress' adjournment and be of no further force and effect

If a successor committee in the subsequent Congress brought a civil action to enforce the prior committee's subpoena, its success might depend upon whether the court viewed the prior subpoena and refusal to comply as a historical fact whose validity could not now be adjudicated. This rationale would support an action for declaratory relief, but not one for injunctive relief.

December 14, 1982

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

You have asked us to consider the question of the continuing effectiveness of a congressional subpoena following the adjournment of a Congress. There are at least four situations in which the issue might arise, including whether the subpoena provides a basis for: (1) a continuing obligation to produce the requested documents; (2) congressional contempt proceedings within the inherent power of Congress; (3) criminal contempt prosecution under 2 U.S.C. § 192 (1976); and (4) civil enforcement in the district court.

We believe that the better view is that the subpoena is not effective as a predicate for the first three proceedings but that it might be for the last. For the first two, there could be no continuing assertion of congressional authority because the subpoena will have lost present force and effect. For the third, judicial interpretation of the process by which a committee's citation for contempt is certified under 2 U.S.C. § 194 for prosecution under 2 U.S.C. § 192, coupled with appropriate separation of powers principles, should prevent further congressional action after adjournment.[1] For the last, the issue is whether the

---

[1] This memorandum does not address the separate issue whether 2 U.S.C. § 192 and § 194 can ever be applied to executive officials *See* Letter of June 18, 1956, from William P. Rogers, Deputy Attorney General, to Hon. John E. Moss, Chairman, Government Information Subcommittee, Committee on Government Operations, *reprinted in Availability of Information from Federal Departments and Agencies Hearings Before a Subcomm of the House Comm. on Government Operations,* 84th Cong , 2d Sess. 2891 (1956)

744

historical fact of the viability of the subpoena and lack of compliance in the past is a sufficient basis for further congressional action.

## I. Continuing Obligation to Produce Documents

It is clear that upon the adjournment *sine die* of a Congress, a House subpoena would cease to have any current effectiveness as far as imposing a continuing obligation to produce documents. This lapse in effectiveness of the subpoena results from the same factors that produce, at that same time, the death of all pending legislation not enacted, *see* F. Riddick, *The United States Congress* 56 (1949), and the termination of congressional authority to hold a contumacious witness in custody. *See Anderson* v. *Dunn,* 19 U.S. (6 Wheat.) 204, 231 (1821); *Marshall* v. *Gordon,* 243 U.S. 521, 542 (1917). Because the subpoena would lack any present force or effect, it would impose no continuing duty to comply.

## II. Inherent Congressional Power to Punish for Contempt

It is similarly clear from *Anderson* and *Marshall* that any confinement for contempt imposed *by Congress* in the exercise of its inherent constitutional powers must terminate upon adjournment *sine die*. *See United States* v. *Fort,* 443 F.2d 670, 676 (D.C. Cir. 1970), *cert. denied,* 403 U.S. 932 (1971). The duration of confinement, in fact, is measured by the session, and not the term, of Congress. This shorter duration seems to indicate that the limitation is imposed not merely out of a recognition that the subpoena lacks any present force or effect and will therefore not support the continued exercise of the power to impose a penalty for contempt. Whatever the alternative rationale which requires the more strenuous limitation, the result is clear that the effect of adjournment is the end of congressional power.

## III. Criminal Prosecution Under 2 U.S.C. § 194

Section 194 of Title 2, United States Code, provides:

> Whenever a witness summoned as mentioned in section 192 of this title fails to appear to testify or fails to produce any books, papers, records, or documents, as required, or whenever any witness so summoned refuses to answer any question pertinent to the subject under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee or subcommittee of either House of Congress, and the fact of such failure or failures is reported to either House while Congress is in session, or when Congress is not in session, a statement of fact constituting such failure is reported to and filed with the President of the Senate or the Speaker of the House, it shall be the duty of the said President of the Senate or Speaker of the House, as the case may be, to

745

certify, and he shall so certify, the statement of facts aforesaid under the seal of the Senate or House, as the case may be, to the appropriate United States Attorney, whose duty it shall be to bring the matter before the grand jury for its action.

The predicate offense under § 192 of refusal to testify or produce papers is set out in the footnote.[2]

Section 194 appears to require a vote by a committee of Congress to hold the witness in contempt and a report by that committee of such fact to the House or the Senate while Congress is in session or to the Speaker of the House or the President of the Senate when Congress is not in session. The Speaker or the President of the Senate shall then certify the facts to the United States Attorney for prosecution. Judicial interpretation, however, has placed several important glosses on the statute.

In *Wilson* v. *United States*, 369 F.2d 198 (D.C. Cir. 1966), the court considered the procedures for a contempt committed and reported while Congress was not in session. The court held that the Speaker of the House did not have a mandatory duty to certify the statements to the United States Attorney; "his automatic certification, under a disclaimer denying his jurisdiction to make any inquiry or take any different course, was invalid." *Id.* at 200.

The court reasoned that the apparently mandatory language of § 194 regarding certification was the same whether Congress was in session or not. Yet it had been the practice of Congress since 1857 that the Speaker was not under a mandatory duty to certify the report of the committee when Congress was in session. Instead, a member of the committee would offer a resolution for the consideration of the House involved. The court stated:

> It is clear that where the alleged contempts are committed while Congress was in session, the Speaker may not certify to the United States Attorney the statements of fact prepared by the Committee until the report of alleged contempt has been acted upon by the House as a whole.

369 F.2d 202. The court supported its conclusion by a brief discussion of prior judicial construction.[3]

The court also rejected the argument that even if House or Senate consideration was necessary if Congress was in session, the statute contemplated automatic

---

[2]     Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months.
2 U.S.C § 192.

[3] *In re Chapman*, 166 U.S. 661 (1897) (holding that the Speaker or the President of the Senate may not certify the facts to the United States Attorney if a contempt resolution is defeated by the House whose action initiated the contempt action); *United States* v. *Costello*, 198 F.2d 200, 204–05 (2d Cir.), *cert. denied*, 344 U S. 874 (1952) (referring to resolution of the Senate citing defendant to contempt as "required by 2 U.S.C. § 194").

certification without further legislative consideration if Congress was not in session. The court reasoned that the single statutory phrase could not have such two radically different readings. Moreover, by scheduling hearings when Congress was not in session or postponing reports until after adjournment, a committee might be able to insulate its actions on contempt matters from consideration by the full House or Senate. The 1936 amendment to the statute, which added the certification requirement, precluded an interpretation that would allow that result.[4] If certification were mandatory, there would be no such check on the committee.

The court then concluded that the established legislative practice required the interpretation that 2 U.S.C. § 194 "vests jurisdiction in the Speaker of the House and the President pro tempore of the Senate, when Congress is not in session, to provide a substitute for the kind of consideration which would be provided by the house involved if it were still in session." 369 F.2d 203–04.

From the text of § 194, as construed by *Wilson*, and certain well-established rules of legislative practice, the following principles seem clear. After the committee vote, a written report is required. If the report is prepared while Congress is in session, it must be submitted to the full House[5] in the form of a resolution directing the Speaker to certify the facts to the United States Attorney. If the House votes down the resolution, the committee citation is of no further force or effect; adjournment of the Congress presents no novel issue in this situation. Similarly, if the House fails to act on the resolution before adjournment, the resolution also dies; again, no novel issue is presented by the particular kind of resolution. If the House votes in favor of the resolution, it would be certified to the United States Attorney.[6]

If the committee fails to report the fact of the contempt while Congress is in session, *Wilson*, as well as general principles of separation of powers, can be read to preclude the committee from submitting the report to the Speaker for his action.[7] The *Wilson* court stated that if the contempt occurred while Congress was in session, the Speaker could not certify the statement of facts until the report was acted upon by the House as a whole.[8] Given the clear preference of the courts

---

[4] Both committee reports on the 1936 amendment state that "the requirement that the statement of facts first be filed with the President of the Senate or the Speaker of the House constitutes a check against hasty action on the part of a committee." H R Rep No 1667, 74th Cong., 1st Sess 2 (1935), S Rep. No 2037, 74th Cong., 2d Sess. 2 (1936)

[5] *See also Kinoy* v. *District of Columbia*, 400 F 2d 761, 765 n 6 (D.C. Cir 1968)

> Appellant, however, forcefully argues that there are both substantive and procedural advantages to a contempt proceeding, the most important of which is that where Congress calls upon the courts to prosecute a contempt charge under 2 U.S.C. § 192 (1964), affirmative action by the subcommittee, the full committee and finally by the House (if it is in session) is required. 2 U S.C. § 194 (1964) *See Wilson* v. *United States*, 125 U S. App D.C 153, 369, F 2d 198 (1966).

[6] Again, this procedure assumes that §§ 192 and 194 would be applicable to an Executive Branch official. *But see* note 1, *supra*

[7] This conclusion does not depend on whatever requirement might be imposed by internal committee or House rule that all action of the committee be reported to the House while Congress is in session; whether the committee could meet during the adjournment to prepare the report; or whether, even regardless of the general rules for reporting committee action, the report of a contempt would be treated differently, given that § 194 at least on its face seems to reflect the possibility of action by the Speaker and not the full House

[8] It may be argued that this interpretation extends *Wilson* too far. The statement in *Wilson*, in context, appears to stand only for the point that certification by the Speaker is not mandatory because House action would be required if Congress were in session.

for action by the full House before anyone is held to answer for an alleged contempt,[9] *Wilson* could be read to require action by the House and not merely the Speaker if the contempt occurs while Congress is in session.

These concerns are especially important in the context of a dispute between the Executive and the Congress which arises because of a clash between the Executive's enforcement responsibilities and Congress' investigative responsibilities. In that situation, there seems additional reason to believe that a court would require the judgment of the full House that an Executive Branch official, acting directly pursuant to a direction from the President, should be held in contempt of Congress.

Under this reading of § 194, if the committee failed to report the contempt to the House before the adjournment, or, as noted above, if the House failed to act on the resolution, the citation would be of no further force and effect. It would die upon adjournment as does all uncompleted committee action.[10]

## IV. Civil Enforcement of the Subpoena

Whether a civil action to enforce the subpoena could be brought following the adjournment might depend on whether a successor committee in the subsequent Congress again issued a subpoena for the documents and was again refused or whether it merely tried to bring an action based on the subpoena issued and refused in this Congress. The availability of relief might also depend on whether the action were brought for declaratory or injunctive relief.

### A. Subpoena and Refusal in the New Congress

It seems clear that the successor committee in the new House could request the same documents again and that, upon the Executive's refusal to produce, it could seek authority from the Congress, if it does not already exist, to bring a civil action to enforce the subpoena. Declaratory relief would be available; and if the court rejected the claim of executive privilege, it could order injunctive relief. *Senate Select Committee on Presidential Campaign Activities* v. *Nixon*, 498 F.2d 725 (D.C. Cir. 1974) *(en banc)*.

### B. Enforcement by the New Congress of the Prior Subpoena

An argument can be made that the new House committee could not bring an action upon the prior subpoena because the House is not a continuing body. *See*

---

[9] As noted above, the *Wilson* court expressed its concern that a committee might insulate its actions by postponing reports until after adjournment. Even though discretionary review by the Speaker when Congress was not in session, which the *Wilson* court required, would alleviate this concern to some extent, action by the Speaker alone still does not provide the same statement of congressional intent as would action by the full House. *See also Kinoy* v. *District of Columbia, supra,* note 5.

[10] It may be, however, that if a court accepted the view that action by the Speaker alone was inconsistent with appropriate respect for the Executive, the court might allow the Speaker to refer the matter to the House in the next Congress out of a similar respect for the Legislature.

*Gojack* v. *United States,* 384 U.S. 702, 706–07 n.4 (1966).[11] It is possible, however, that the court might view the prior subpoena and refusal as a historical fact, the validity of which could be adjudicated notwithstanding the adjournment of Congress. Thus, if the civil action were authorized by existing law or specific action by the new Congress, the court might entertain it even without a repeated request for and refusal of the documents.

The limitation recognized in *Gojack* arose in the context of a criminal prosecution in which current committee authority was a predicate for committee action and thus the contempt prosecution. A similar limitation might not be imposed if the House were to seek instead civil adjudication based on the prior fact of the alleged contempt.[12]

Other references to the termination of the legislative existence of the particular Congress are also inconclusive. These statements were made in the context of Congress' inherent power to punish contempt. In *Anderson* v. *Dunn, supra,* the Court held that Congress had the inherent constitutional power to impose confinement for contempt but limited the duration of confinement to the session of Congress:

> [B]y the nature of things, since the existence of the power that imprisons is indispensable to its continuance; and although the legislative power continues perpetual, the legislative body ceases to exist on the moment of its adjournment or periodical dissolution. It follows that imprisonment must terminate with that adjournment.

19 U.S. at 231.

The limitation, however, seems not to reflect the absence of legislative existence and thus power in the traditional sense, which is measured not by a session of Congress but by a term. Thus, the limitation seems to have been imposed because the power was implied, and not express; the Court therefore held that the extent of the punishing power was limited to "the least possible power adequate to the end proposed." *Id.*[13] Confinement imposed pursuant to a criminal contempt conviction, in fact, is not similarly limited to the term of Congress. *Marshall* v. *Gordon, supra.*

To these distinctions should be added two additional considerations. First, it is possible that a court might rely on traditional notions of mootness, which preserve for court review disputes which are capable of repetition yet evading review. *See, e.g., Southern Pacific Terminal Co.* v. *ICC,* 219 U.S. 498, 514–16 (1911). Second, the Supreme Court has recognized the desirability of adjudicat-

---

[11] This rule might be different for the Senate, which is a continuing body. *See McGrain* v *Daugherty,* 273 U.S 135, 181 (1927)

[12] Even the conclusion in *McGrain, supra,* note 11, that the Senate is a continuing body is not unambiguous because the Court went on to invoke traditional considerations of mootness, which would not have been necessary if the Court were relying on some continuing authority of the Senate derived from its status as a continuing body

[13] Other considerations of separation of powers and due process may also have been involved The Court might have wanted to avoid having itself to decide what limitation on confinement should be imposed and yet have been unwilling to accept that there might be no limitation

ing issues of executive privilege in a civil action and not a contempt proceeding. *United States* v. *Nixon,* 418 U.S. 683 (1974). One lower court has expressed a clear preference for determining constitutional privilege in a civil action and not a criminal prosecution. *Tobin* v. *United States,* 306 F.2d 270, 276 (D.C. Cir.), *cert. denied,* 371 U.S. 902 (1962).[14]

It may be, therefore, that there is no absence of congressional power to proceed upon the prior fact of refusal to produce documents in response to a subpoena. Under this view, a question would be raised about what kind of relief could be obtained in the civil action. The above rationale would support an action for declaratory relief based upon the historical facts. It might not support injunctive relief if the court were to conclude that the successor committee was not an entity entitled to receive the documents requested by its predecessor. In that situation, however, the new committee could rely upon an adjudication that the prior refusal was not supported by executive privilege, and could seek the documents by a new subpoena.

> THEODORE B. OLSON
> *Assistant Attorney General*
> *Office of Legal Counsel*

---

[14] Whether these considerations would be persuasive only if Congress did not seek criminal sanctions in addition to the civil action is not clear. It is possible that the court would find that Congress elected its remedy in the criminal prosecution and thus refuse it additional consideration in the context of a civil action