**Joel B. ODUM, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 88–639.**

District of Columbia Court of Appeals.

Submitted Oct. 2, 1989.

Decided Nov. 6, 1989.

Shailly P. Agnihotri, New York City, appointed by this court, was on the brief for appellant.

Frederick D. Cooke, Jr., Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Mary L. Wilson, Asst. Corp. Counsel, Washington, D.C., were on the brief for appellee.

Before NEWMAN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

After he obstructed the entry of a dump truck into a construction site, appellant was found guilty of unlawful assembly for the purpose of incommoding the free use of a driveway. D.C.Code § 22–1107 (1989). Although it may be true, as the government contends, that appellant's conduct offended other penal statutes, we conclude that it did not violate this one. We therefore vacate the judgment of conviction and remand with directions to enter a judgment of acquittal.

I.

On June 30, 1989, appellant joined a group of individuals who had gathered to protest the construction of a roadway through Glover–Archbold Park in northwest Washington, D.C. The group had been engaged in a lawful protest in which they carried signs and walked back and forth across the entrance to the construction site. Before appellant joined the group, none of the protesters had impeded access to the site; rather, the undisputed testimony was that they had moved out of the driveway whenever vehicles wished to enter.[1] Shortly after appellant's arrival, a dump truck attempted to enter the site. All members of the group except appellant moved out of the driveway and continued the protest alongside the entrance. Appel-

---

1. The witness testifying to this fact was uncertain whether the protesters had had to yield to incoming trucks that morning before appel-lant's arrival, but stated that this "happened on many mornings," and was consistent with the group's purpose not to obstruct entry.

lant remained in the entrance and, when asked twice to move, refused to do so. He was then arrested. No evidence was offered that appellant's action was part of any planned group activity; appellant testified, without contradiction, that his decision to obstruct the entranceway was personal.

In finding appellant guilty, the trial court made no finding that the group he joined had assembled for an unlawful purpose. Instead, the court apparently assumed that a conviction for incommoding under § 22–1107 does not require proof of an assembly for an unlawful purpose, or indeed any assembly, a view the court stated explicitly in its later written order denying appellant's motion for reduction and stay of execution of sentence.[2] The court distinguished *Kinoy v. District of Columbia*, 130 U.S. App.D.C. 290, 400 F.2d 761 (1968), by noting that that case dealt with "loud and boisterous conduct" under the statute, not incommoding, and that the latter offense—so the court believed—requires only the obstructive act itself.

## II.

D.C.Code § 22–1107 is entitled, in part, "Unlawful Assembly," and provides in relevant part that it is unlawful

> *to congregate and assemble in any street,* avenue, alley, road or highway, or in or around any public building or inclosure, or any park or reservation or at the entrance to any private building or inclosure, and engage in loud and boisterous talking or other disorderly conduct, or to insult or make rude or obscene gestures or comments or observations on persons passing by, or in their hearing, *or to crowd, obstruct, or incommode the free use of any such street,* avenue, alley, road, highway, or any of the foot pavements thereof.... (Emphasis added.)

The trial court apparently was of the view that the words "or to" before "crowd, obstruct, or incommode" serve to identify an offense separate from "to congregate and assemble ... and engage in loud and boisterous talking," so that no assembly for an unlawful purpose was necessary to permit appellant's conviction for incommoding. While this construction is interesting as a matter of original textual analysis, it is contrary to binding interpretation of the statute. The government disavows it.[3]

In *Kinoy v. District of Columbia, supra,* the United States Court of Appeals for the District of Columbia Circuit made clear that a conviction under the quoted portion of § 22–1107 requires both "congregat[ing] and assembl[ing]" *and* the commission of one of the additional acts set forth (*e.g.,* "engag[ing] in loud and boisterous talking" or "crowd[ing], obstruct[ing], or incommod[ing]"). The court distinguished these enumerated acts from others set forth later in the statute, as to which there is no predicate requirement of congregating and assembling. 130 U.S. App.D.C. at 295 n.8, 400 F.2d at 766 n.8. The court also appended to its decision, expressing "substantial agreement" with, an unpublished opinion by Judge Murphy of the Superior Court[4] holding that conviction under the unlawful assembly portion of § 22–1107 requires the conjunction of an assembly (by three or more persons) for an unlawful purpose and one of the enumerated disorderly acts. Judge Murphy in turn had relied on an earlier opinion of the United States Court of Appeals holding—in the specific context of a charge of unlawful assembly and incommoding the free use of a sidewalk—that both concerted presence for an unlawful purpose and the commission of a listed "overt" act are necessary for conviction under the statute. *Id.* at 298–99, 400 F.2d at 770, *quoting Hunter v.*

---

2. "The Court finds that the three or more [persons] rule ... does not apply to incommoding offenses."

3. We note that the information did not charge appellant merely with incommoding; rather, it charged him with "congregat[ing] and as-

sembl[ing] with others ... and ... crowd[ing], obstruct[ing] and incommod[ing] the free use of said thoroughfare by fail[ing] to move to permit a dump truck entrance into the driveway...."

4. *District of Columbia v. Reed,* Crim. No. DC 2021–67 (May 11, 1967) (Murphy, J.).

*District of Columbia,* 47 App.D.C. 406, 409 (1918).[5] Thus, as *Kinoy* and *Hunter* make apparent, appellant's conviction for unlawful assembly required proof of two things:

(1) "the presence of three or more persons acting in concert for an unlawful purpose," *Kinoy, supra,* 130 U.S.App. D.C. at 299, 400 F.2d at 770; and

(2) commission of the act of incommoding alleged in the information.

In light of those decisions, we cannot accept the trial court's analysis uncoupling the elements of unlawful assembly and incommoding.

### III.

It remains for us to test the sufficiency of the evidence against the elements set forth in *Kinoy.* The government argues briefly that the demonstrators as a group were blocking the path of trucks and hence acted together for an unlawful purpose. We can find no evidence in the record to support this argument. The testimony at trial indicated that while the protesters, in the course of demonstrating, did move back and forth across the driveway, before appellant's arrival they always moved aside to allow traffic to enter. The only colorable support for the government's position is the testimony of the arresting officer that, when he arrived on the scene, the protesters were standing in the driveway while three dump trucks were *parked* around the corner waiting to get in. There was no evidence, however, that these trucks had ever attempted to enter and been denied access or that any member of the group, besides appellant, ever sought to prevent trucks from entering. The mere fact that the demonstrators occupied the driveway when no traffic sought to enter

does not manifest an intent to obstruct entry into the worksite.

The government's primary argument is that, though the protest originally may have been for a lawful purpose, the demonstrators supported and allied themselves with appellant's wrongful actions by continuing to picket on either side of the entranceway. The argument, in essence, is that the others aided and abetted appellant—thus manifesting the required concerted purpose—by "associat[ing] themselves] with the venture ... participat[ing] in it as something that [they] wished to bring about, [and seeking] by [their] action to make it succeed." *Creek v. United States,* 324 A.2d 688, 689 (D.C.1974), quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, J.).

We need not consider what sort of conduct by appellant's fellow protesters might have been sufficient to impute to them his unlawful intent, for the evidence here fell short of any such showing. There was no evidence presented that any of the demonstrators lent support or encouragement to appellant's unlawful action. On the contrary, the evidence points solely to the conclusion that they had no prior knowledge of his purpose and that, when he carried out his intent to obstruct the driveway, they chose not to join in. The mere fact that they continued their lawful protest cannot be enough to impute his intent to them, else questions would arise about the constitutionality of the unlawful assembly statute as applied. Instead, we hold that the evidence failed to establish the necessary concert of unlawful purpose. *See Lair v. State,* 316 P.2d 225, 234 (Okla.1957) (if one person acts unlawfully without concurrence of others, that person is not guilty of

---

5. The essential link between incommoding and assembly for an unlawful purpose is shown by the following passage from *Hunter:*
   It would hardly be contended ... that if defendants had met on one of the spacious sidewalks of Pennsylvania Avenue to conduct a

peaceable conversation, though in a degree inconveniencing pedestrians, they would be guilty, under the statute, of crowding and obstructing the free use of the walk.
47 App.D.C. at 409.

unlawful assembly); 54 Am.Jur.2d *Mobs and Riots* § 8 (1971) (concurrence of required number of persons in illegal act necessary for unlawful assembly conviction, since otherwise there exists no common intent).

The judgment of conviction is, accordingly,

*Reversed.*