# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 12, 2016       Decided March 3, 2017

No. 16-3003

UNITED STATES OF AMERICA,
APPELLANT

v.

DAVID BRONSTEIN, ET AL.,
APPELLEES

On Interlocutory Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cr-00048)

*Daniel J. Lenerz*, Assistant U.S. Attorney, U.S. Attorney's Office, argued the cause for Appellant. With him on the briefs were *Elizabeth Trosman*, *John P. Mannarino*, and *James M. Perez*, Assistant U.S. Attorneys.

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the brief for Appellees.

Before: BROWN and SRINIVASAN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

2

As we recently said, "[f]or more than sixty-five years, a federal statute has restricted the public's conduct of expressive activity within the building and grounds of the Supreme Court." *Hodge v. Talkin*, 799 F.3d 1145, 1149 (D.C. Cir. 2015). The statute at issue in *Hodge*—a fraternal twin of the one at issue here, *see, e.g.*, S. REP. NO. 81-719, at 1828 (1949)—was challenged under the Constitution's void-for-vagueness doctrine. We rejected that claim. *See* 799 F.3d at 1171–73. Now, we consider whether portions of its statutory sibling are unconstitutionally vague.

The statute here is 40 U.S.C. § 6134. Entitled "Firearms, fireworks, speeches, and objectionable language in the Supreme Court Building and grounds," it provides:

> It is unlawful to discharge a firearm, firework or explosive, set fire to a combustible, make a harangue or oration, or utter loud, threatening, or abusive language in the Supreme Court Building or grounds.

*Id.* The district court below held the terms "harangue" and "oration" unconstitutionally vague. *United States v. Bronstein*, 151 F. Supp. 3d 31, 41–44 (D.D.C. 2015).

The district court concluded that, for constitutional purposes, "harangues" and "orations" do not exist as such—they "cannot be determined without reference to subjective perceptions and individual sensitivities." *See, e.g.*, *id.* at 42 (referring to "harangue"); *see also id.* at 42 n.9, 44. The vagueness analysis, however, is objective. It turns on the tools of statutory interpretation.

Employing the tools of statutory interpretation, we hold 40 U.S.C. § 6134 gives a core meaning to both "harangue" and

"oration." This core meaning is delivering speeches of various kinds to persons within the Supreme Court's building and grounds, in a manner that threatens to disturb the operations and decorum of the Court. In the context of the Supreme Court's building and grounds, the terms' core meaning proscribes determinable conduct. Thus, the district court erred in striking the terms as void for vagueness.

## I.

### *Factual Background[1]*

Appellees spent April Fools Day of 2015 interrupting an oral argument session of the U.S. Supreme Court. Before argument began, all of the Appellees were seated within the courtroom, and all of them must have heard the following announcement from a Supreme Court police officer:

> Welcome to the Supreme Court of the United States. *During today's oral arguments it is important that you remain seated and silent.* When the first case breaks*, please remain silent.* If you are remaining for the second case, *remain seated. If you are leaving, silently exit* the Courtroom. . . . Please alert one of the police officers if you observe anything suspicious, and in the event of an emergency, please remain calm and follow the directions of a police officer. Thank you.

---

[1] The district court relied upon the statement of facts set forth in the Government's Opposition to Defendants' Motion to Dismiss. *See Bronstein*, 151 F. Supp. 3d at 34 n.1. Neither the Government nor the Appellees dispute the district court's recitation, so we rely upon it here.

4

*Bronstein*, 151 F. Supp. 3d at 34–35 (emphasis added).   None of these repeated admonitions to remain seated and silent deterred Appellees, however.

After the Supreme Court's Marshal gaveled the Court into session and "audience members to their seats, . . . only one member of the audience," Appellee Belinda Rodriguez, "remained standing."   *Id.* at 35.   She raised her arm into the air and said, "We rise to demand democracy.   One person, one vote!"   *Id.*   After Supreme Court police removed Appellee Rodriguez from the courtroom, Appellee Matthew Kresling stood up and said, "We rise to . . . Money is not speech.   One person, one vote!"   *Id.*   Then, upon Kresling's removal, Appellee Yasmina Mrabet raised an arm in the air while saying, "Justices, is it not your duty to protect our right to self-government?   The first . . . overturn *Citizens United*. One person, one vote!"   *Id.*   Upon Mrabet's restraint and removal, Appellee Richard Saffle stood and stated, "Justices, is it not your job to ensure free, fair elections?"   *Id.*   Like his cohorts, he too was restrained and removed from the courtroom by police.   *Id.*   After Saffle's disruption, Chief Justice Roberts warned the remaining audience members that "[a]nyone else interested in talking will be admonished that it's within the authority of this Court to punish such disturbances by criminal contempt."   *Id.*   Nevertheless, Appellee David Bronstein began singing "immediately" after the Chief Justice's warning.   *Id.*   Bronstein sang, "We who believe in freedom shall not rest; we who believe in freedom shall not rest."   *Id.*   Bronstein, too, was removed and restrained.   *Id.* All of the Appellees were placed under arrest and subsequently transported to a U.S. Capitol Police station.   *Id.*   In total, the Appellees' spectacle "lasted approximately two to four minutes."   *Id.*

Two days later, the U.S. Attorney's Office charged Appellees with violations of: (1) 18 U.S.C. § 1507[2] (Count One); and (2) 40 U.S.C. § 6134 (Count Two), the statute quoted above. *See* 151 F. Supp. 3d at 35. Appellees moved to dismiss Count Two, claiming 40 U.S.C. § 6134 is facially unconstitutional. *See id.* at 36. Count Two charged Appellees with violating the statute's prohibitions on "mak[ing] a harangue or oration . . . in the Supreme Court Building," and "utter[ing] loud . . . language in the Supreme Court Building." *See id.* at 35.[3] The Appellees' motion to dismiss Count Two alleged, *inter alia*,[4] the Due Process Clause of the Fifth Amendment to the U.S. Constitution renders § 6134's prohibitions on "mak[ing] a harangue or oration" and "utter[ing] loud . . . language" unconstitutionally vague. *See id.* at 36.

## II.

[2] This statute proscribes demonstrating "in or near a building housing a court of the United States" "with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer in the discharge of his duty." 18 U.S.C. § 1507. This statute is not at issue in this appeal.

[3] The Government twice filed a Superseding Information, clarifying the portions of 40 U.S.C. § 6134 at issue. *See* Appellant App. 012, 015, 026, 092; *Bronstein*, 151 F. Supp. 3d at 36 ("Count Two now contains no reference to 'abusive' or 'threatening' language or the Supreme Court grounds as a whole—it simply charges Defendants with 'unlawfully mak[ing] a harangue or oration or utter[ing] loud language in the Supreme Court Building.'").

[4] After the Government filed its second Superseding Information, Appellees "informed the Court that they no longer intended to challenge Count Two on First Amendment grounds," which was part of their motion to dismiss. *See Bronstein*, 151 F. Supp. 3d at 36. Accordingly, only Appellees' void-for-vagueness challenge is before us here.

6

*Proceedings Below*

After an oral hearing on the motion, the district court issued an order and accompanying opinion granting in part and denying in part the Appellees' motion to dismiss. The district court first considered whether "loud" in § 6134 was unconstitutionally vague. The district court did not strike "loud" as unconstitutionally vague; it adopted a narrowing construction. *Id.* at 41. Under the district court's reading, "[t]he Government may prosecute Defendants for having 'utter[ed] loud . . . language in the Supreme Court Building,' but only insofar as their utterances disturbed or tended to disturb the normal operations of the U.S. Supreme Court."[5] *Id.* The district court gave neither "harangue" nor "oration" a narrowing construction. Rather, the district court struck these words from § 6134 as unconstitutionally vague. *See id.* at 44. The Government appealed the district court's decision.

## III.

*Standard of Review*

Whether "harangue" or "oration" is unconstitutionally vague within § 6134 involves only "pure questions of law." *See Hodge*, 799 F.3d at 1171. As such, our review is *de novo*. *Id.* at 1155. The vagueness inquiry implicates a number of interpretive principles. Explaining them here will help illuminate our interpretation of § 6134.

A law is vague when "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it

---

[5] The Government does not challenge the district court's limiting construction of "loud," and we do not address it here.

invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The void-for-vagueness doctrine "developed from the rule of construction that penal statutes are to be construed strictly in favor of the accused." Note, *Indefinite Criteria of Definiteness in Statutes*, 45 HARV. L. REV. 160, 160 n.2 (1931). The doctrine grew to take on constitutional status, allowing a court to not merely "save" an indefinite statue with judicial construction, but to strike the statute as unconstitutional when its vagueness transgressed the guarantees of the Due Process Clause within the Fifth and Fourteenth Amendments. *See generally* Anthony G. Amsterdam, Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. PA. L. REV. 67 (1960) (analyzing the myriad constitutional values and issues of judicial administration informing the void-for-vagueness doctrine's use); *see also id.* at 75 ("[T]he doctrine of unconstitutional indefiniteness has been used by the Supreme Court almost invariably for the creation of an insulating buffer zone of added protection at the peripheries of several of the Bill of Rights freedoms.").

Consistent with its origins, a statute's vagueness is either susceptible to judicial construction or is void for vagueness based on the application of traditional rules for statutory interpretation. *See Bouie v. Columbia*, 378 U.S. 347, 355 n.5 (1964) ("The determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and other pertinent law, rather than on the basis of an *ad hoc* appraisal of the subjective expectations of particular defendants."); *see also United States v. Williams*, 553 U.S. 285, 306 (2008) (explaining terms void for vagueness lack "statutory definitions, narrowing context, or settled legal meanings"). These rules "consistently favor[] that interpretation of legislation which supports its constitutionality." *See Screws v. United States*, 325 U.S. 91,

98 (1945). "Only if no construction can save the Act from this claim of unconstitutionality are we willing to" strike the statute. *Id.* at 100. To be clear, this is no legislative giveaway. By limiting construction to "the statute itself and other pertinent law, rather than . . . *ad hoc* appraisal," *see Bouie*, 378 U.S. at 355 n.5, the doctrine spurns attempts to save a statute from unconstitutional vagueness based on "speculative" tests "detached from statutory elements" that do not "craft a principled and objective standard." *See Johnson*, 135 S. Ct. at 2558.

At first blush, tension appears between a vagueness inquiry viewed from the vantage point of "ordinary people," and a vagueness analysis carried out with the standard tools of statutory interpretation. Yet this tension is assuaged by understanding what the doctrine means by "fair notice," "vagueness," and the vantage point of "ordinary people."

To provide "fair notice," "[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982). "Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke*, 423 U.S. 48, 50 (1975). As far as we can tell, no Supreme Court decision has ever struck a statute as unconstitutionally vague merely because it uses terms that, at the moment, may not be widely used. *See* Peter W. Low and Joel S. Johnson, *Changing the Vocabulary of the Vagueness Doctrine*, 101 VA. L. REV. 2051, 2055 (2015) ("We are aware of no United States Supreme Court case where a statute has

been held unconstitutionally vague because socialization notice was lacking."); c*f. Northern Ind. Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 274 (7th Cir. 1986) ("We do not believe that we have the power to declare a constitutional statute invalid merely because we, or for that matter everybody, think[s] the statute has become obsolete."). Similarly, a term is not saved from being void for vagueness merely because the present moment's vernacular clearly understands some of its applications—the question is whether the term provides a discernable standard when legally construed. *See, e.g.*, *Coates v. Cincinnati*, 402 U.S. 611, 612 614 (1971) (explaining that "annoying" was unconstitutionally vague because its statutory use specified "no standard of conduct at all," even as the state supreme court characterized "annoying" as a "widely used and well understood word"); *see also Johnson*, 135 S. Ct. at 2561 (reaffirming *Coates* while stating that some conduct, like "spitting in someone's face," would "surely" be understood as "annoying").

As described here, "fair notice" is consonant with the longstanding principles of statutory construction. Citizens are charged with generally knowing the law, and what a law means is a function of interpreting the statute. These principles—possessing general knowledge of the law and judicial reliance upon legal interpretation—bring "vagueness" and the "ordinary person's" vantage point into focus.

Even as the vagueness inquiry refers to a law's meaning to the "ordinary person," a statutory term is not rendered unconstitutionally vague because it "do[es] not mean the same thing to all people, all the time, everywhere." *See, e.g.*, *Roth v. United States*, 354 U.S. 476, 491 (1957). When interpreting a statutory term, we are not concerned with vagueness in the sense that the term "requires a person to conform his conduct to an imprecise but comprehensible normative standard," whose

satisfaction may vary depending upon whom you ask. *See, e.g.*, *Coates*, 402 U.S. at 614. Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning "specifie[s]" "no standard of conduct . . . at all." *Id.*; *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982) (setting forth the distinction articulated in *Coates* as describing what "the complainant must prove" "to sustain . . . a challenge" on vagueness grounds); *Int'l Harvester Co. of Am. v. Kentucky*, 234 U.S. 216, 221 (1914) (holding a law is void for vagueness when it offers no "standard of conduct that [was] *possible to know*" (emphasis added)). "As a general matter," the vagueness doctrine does "not doubt the constitutionality of laws that call for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 135 S. Ct. at 2561 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)). Accordingly, when the vagueness doctrine assesses a legal term's meaning to "ordinary people," it is assessing meaning with the elementary rule of statutory interpretation: Words receive their "plain, obvious and common sense" meaning, "unless context furnishes some ground to control, qualify, or enlarge it." *See* Joseph Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES 157–58 (1833).

With these neutral principles in mind, we can assess whether § 6134's "harangue" and "oration" are void for vagueness. Properly interpreted, they are not.

## IV.

*"Harangue" And "Oration" In 40 U.S.C. § 6134 Prohibit Public Speeches Within The Supreme Court's Building And Grounds*

Both "harangue" and "oration" have long been illustrative of public speeches.  As all of the district court's references to "harangue" and "oration" within current dictionaries confirm, both words involve making a speech to a public assembly. *See Bronstein*, 151 F. Supp. at 41–42; *id.* at 43–44.  As the Government's Brief observes, dictionaries at the time § 6134 was enacted confirm a similar harmony.  *See* Gov't Reply Br. 10 n. 1 & 11 n. 2 (citing dictionaries from the late 1940's and 1950's showing that both "harangue" and "oration" describe speech to a public audience).  Indeed, "harangue" and "oration" were used to define "speech" itself in American dictionaries around the First Amendment's ratification.  *See We the People Found., Inc. v. United States*, 485 F.3d 140, 148 n.4 (D.C. Cir. 2007) (citing dictionaries from 1785 and 1790 defining "speech" by, *inter alia*, "harangue" and "oration").  That "harangue" and "oration" may not roll off the average person's tongue today does not alter their possession of a settled meaning around public speeches.

It is true, as their dictionary definitions show, that "harangue" and "oration" can cover different facets of public speeches—"orations" can include formal speeches, while "harangues" can include angry or vehement speeches.  But we are interpreting a statute, not restating a dictionary.  Our search here is not for every facet of "harangue" or "oration," but their meaning within the statute at issue.  The question is whether the terms "converge upon [certain] behavior" that is "useful as a descript[or] of the 'core' behavior to which the statute may constitutionally be applied."  *See United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991).  They do indeed.

The longstanding principles of statutory interpretation hold that "a word is known by the company it keeps."  *Jarecki*

*v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961). So it is with "harangue" and "oration" in this statute. The prohibitions surrounding "harangue" and "oration" demonstrate concern with disruptions of the Supreme Court's order and decorum. These prohibitions include the use of "firearm[s]," "firework[s]," "explosive[s]" and "set[ting] fire to a combustible." *See* 40 U.S.C. § 6134. After the "combustible" clause, the statute's language shifts to "make a harangue or oration," and "utter loud, threatening, or abusive language." *Id.*

These sundry prohibitions are not merely various noises—they all tend to disrupt the Court's operations. That concern should illuminate the construction of "harangue" and "oration." *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (holding that a statute's words, even when "marked by flexibility and reasonable breadth, rather than meticulous specificity," are clear based on "what the ordinance as a whole prohibits"). By keeping this concern in mind, the use of "harangue" and "oration" within the statute comes into view; they refer to public speeches that tend to disrupt the Court's operations, and no others. *See id.* at 113 ("Rockford does not claim the broad power to punish all 'noises' and 'diversions.' . . . Rather, there must be demonstrated interference with school activities."); *Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1330 (Fed. Cir. 2002) ("Challenged terms must be read in context of the regulation as a whole, and we have little doubt that visitors of ordinary intelligence reading [the applicable law] would understand what behavior was expected of them on VA property—particularly on the grounds of a national cemetery."); *Coppock v. Patterson*, 272 F. Supp. 16, 19 (S.D. Miss. 1967) (interpreting a statute employing prohibitions very similar to the formulation in § 6134; holding "[i]n view of the foregoing we have no doubt that *a State infringes no Constitutional limitation* when it prohibits . . . harangues [and]

orations . . . on the grounds occupied by its Capitol buildings, its office buildings, and its executive mansion." (emphasis added)). An oral argument, for example, could be considered a public speech within the Supreme Court. But oral arguments do not tend to disrupt the Court's operations (well, arguably). A tour guide's "speech" to Court tourists would similarly not fall within the statute's ambit, as it does not tend to disrupt the Court's operations and decorum. The same contextual limit is part of the other prohibitions within § 6134. A security officer that discharges his firearm to protect the Court, for example, does not tend to disrupt the Court's operations.

By employing two words that cover public speeches of myriad forms within a statute focused on the Supreme Court's building and grounds, Congress's use of "harangue" and "oration" indicates these terms are meant to cover any form of public speeches that tend to disrupt the Supreme Court's operations. *See Grayned*, 408 U.S. at 112 ("Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted.").

Section 6134's scope is apparent from its title; applying to "Firearms, fireworks, *speeches, and objectionable language* in the Supreme Court Building and grounds." *See* 40 U.S.C. § 6134 (emphasis added). Congress, admittedly, did not add this title until 2002, but it is nevertheless proper to consider it. *See Yates v. United States*, 135 S. Ct. 1074, 1083 (2015) ("While these headings are not commanding, they supply cues . . . ."). The terms within § 6134 fulfill the proscriptions set forth in its title. Some of the title's terms are terms within the statute itself. The title's references to "speeches" and "objectionable language," respectively, point directly to the

respective statutory phrases "make a harangue or oration," and "utter loud, threatening, or abusive language." The relationship between the title and the statute's language confirms our construction of the text.

The phrase in which "harangue" and "oration" appear also confirms Congress's interest in proscribing public speeches that tend to disrupt the Court's operations—rather than the particularities of "harangues" or "orations." These clauses employ "make" and "utter," respectively. The statute does not proscribe "harangue or oration;" rather, it does not allow one to "*make* a harangue or oration." 40 U.S.C. § 6134 (emphasis added). Similarly, the statute does not proscribe "loud, threatening, or abusive language," but forbids one to "*utter* loud, threatening, or abusive language." 40 U.S.C. § 6134 (emphasis added). By deploying the terms "make" and "utter," Congress made *making* a speech or *uttering* language that tends to disturb the Court's operations the respective triggers of criminality—not the eccentricities of "harangue," "oration," "loud," "threatening," or "abusive." The statute's genesis confirms this usage. *See, e.g.*, *Hodge*, 799 F.3d at 1150 (explaining this statutory scheme was enacted to further "the government's long-recognized interests in preserving decorum in the area of a courthouse and in assuring the appearance (and actuality) of a judiciary uninfluenced by public opinion and pressure"); *see United States v. Grace*, 461 U.S. 171, 182 (1983); *see also Hodge v. Talkin*, 949 F. Supp. 2d 152, 162–63 (D.D.C. 2013) (detailing the statutory scheme's genesis), *overruled on other grounds*, 799 F.3d at 1173; *see also* H.R. REP. NO. 81-814, at 3 (1949) (explaining Congress sought to "prohibit[] . . . [the] *making of* speeches, etc., in the [Supreme Court] building or grounds") (emphasis added); S. REP. NO. 81-719, at 2 (1949) ("Various acts, such as . . . *making* speeches . . . are prohibited . . . by the bill." (emphasis added)). As well-established descriptors of myriad

public speeches, it makes sense for Congress to deploy both "harangue" and "oration" within a statutory phrase targeting all public speeches that tend to disrupt the Court's operations.

The district court, however, viewed the convergence of "harangue" and "oration" on a single meaning as indicative of their respective vagueness. *See, e.g.*, *Bronstein*, 151 F. Supp. 3d at 42 ("For all the Court can tell, an additional requirement of pomposity, vehemence, or bombast was meant to differentiate 'harangue' from its clausal neighbor, 'oration.'"). We appreciate the district court's reluctance to confound statutory terms. But, "[s]ometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 176–77 (2012) (emphasis in original). This is why the surplusage canon of statutory interpretation must be applied with the statutory context in mind. *See id.* at 179 ("Finally, when a drafter *has* engaged in the retrograde practice of stringing out synonyms and near-synonyms (e.g., *transfer*, *assign*, *convey*, *alienate*, or *set over*), the bad habit is so easily detectible that the canon can be appropriately discounted: *Alienate* will not be held to mean something wholly distinct from *transfer*, *convey*, and *assign*, etc.") (citing GARNER'S DICTIONARY OF LEGAL USAGE 294–97 (3d ed. 2011) (s.v. "Doublets, Triplets, and Synonym-Strings")) (emphasis in original). When a statute's text, context, and history all converge on certain terms possessing a settled legal meaning, the Court should effectuate it. The alternative—following a *presumption* of legislative precision over the Constitution's precipice—does not vindicate substance. It privileges theory.

Turning to the facts here, a person of ordinary intelligence could read this law and understand that, as a member of the Supreme Court's oral argument audience, making disruptive public speeches is clearly proscribed behavior—even in staccato bursts, seriatim. And yet, in a coordinated fashion, each Appellee is alleged to have directed a variation of the same message to the Justices of the Supreme Court and the assembled audience. Their coordinated standing, facing the bench, and messaging indicate the Appellees were addressing the Court and gallery. *Cf.* MY COUSIN VINNY (20th Century Fox 1992) (Judge Chamberlain Haller: "Don't talk to me sitting in that chair! . . . When you're addressing this court, you'll rise and speak to me in a clear, intelligible voice."). Viewed objectively, these alleged acts could easily be considered speeches to a public assembly that tended to disrupt the Court's operations—conduct covered by § 6134's prohibition of "make a harangue or oration."

## V.

The district court erred in striking "harangue" and "oration" as unconstitutionally vague. We therefore reverse and remand for further proceedings in accordance with this opinion.

*Reversed.*