# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 5, 2018         Decided April 5, 2019

No. 17-7114

DARYL THOMAS AGNEW, ET AL.,
APPELLANTS

v.

GOVERNMENT OF THE DISTRICT OF COLUMBIA,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00340)

---

*William Claiborne* argued the cause and filed the briefs for appellants. *Lynn E. Cunningham* entered an appearance.

*Sonya L. Lebsack*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, and *Stacy L. Anderson*, Acting Deputy Solicitor General.

Before: TATEL and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: The District of Columbia is a diverse and thriving city of approximately 700,000 residents. As the nation's capital, it is the site of hundreds of mass events each year. The District also annually hosts tens of millions of tourists from around the nation and the world. To promote and protect the shared use and enjoyment of the city's public areas by residents and visitors alike, District of Columbia law makes it a misdemeanor "to crowd, obstruct, or incommode" the use of streets, sidewalks, or building entrances, and "continue or resume the crowding, obstructing, or incommoding after being instructed by a law enforcement officer to cease" doing so. D.C. Code § 22-1307(a) ("the anti-obstructing statute").

The plaintiffs, three District of Columbia residents who were arrested under the statute, challenge it as unconstitutionally vague on its face on the ground that it authorizes an impermissible degree of enforcement discretion. The District's anti-obstructing statute applies virtually anywhere a pedestrian might be in public. And history teaches that unbridled discretion to control individuals' use of public spaces can be an instrument of abuse. The Supreme Court has invalidated laws that give the police unfettered discretion to punish—or banish—anyone at all, often with the heaviest toll on "poor people, nonconformists, dissenters, [or] idlers." *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972). Under vague laws, people may use public spaces "only at the whim of any police officer." Appellants' Br. 18 (quoting *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90 (1965)).

The statute challenged here confers no such sweeping power. Its terms are clear enough to shield against arbitrary

deployment; it bars only blocking or hindering others' use of the places it identifies. Further, a person is not subject to arrest unless he refuses to move out of the way when an officer directs him to do so. The statute does not criminalize inadvertent conduct, nor does it authorize the police to direct a person to move on if he is not currently or imminently in the way of anyone else's shared use of the place at issue. Because we conclude that the anti-obstructing statute is not unconstitutionally vague on its face, we affirm the district court's dismissal of the complaint.

## BACKGROUND

### A. The District of Columbia's Anti-Obstructing Statute

In the District of Columbia, "[i]t is unlawful for a person, alone or in concert with others:"

(1) To crowd, obstruct, or incommode:
   (A) The use of any street, avenue, alley, road, highway, or sidewalk;
   (B) The entrance of any public or private building or enclosure;
   (C) The use of or passage through any public building or public conveyance; or
   (D) The passage through or within any park or reservation; and
(2) To continue or resume the crowding, obstructing, or incommoding after being instructed by a law enforcement officer to cease the crowding, obstructing, or incommoding.

D.C. Code § 22-1307(a). Violating the law is a misdemeanor punishable by a fine of up to five hundred dollars,

imprisonment for up to ninety days, or both.   *Id.* § 22-1307(c); *id.* § 22-3571.01(b)(3).

The District of Columbia's obstructing ban has been on the books in one form or another since the nineteenth century. From 1892 to 2011, the provision appeared within an "act for the preservation of the public peace and the protection of property."   *See* Act of July 29, 1892, ch. 320, 27 Stat. 322, 323; Act of July 8, 1898, ch. 638, 30 Stat. 723; Act of June 29, 1953, ch. 159, 67 Stat. 90, 97-98; Act of May 26, 2011, D.C. Law 18-375, § 2(a) (codified at D.C. Code § 22-1307).   For the majority of that time, the statute made it unlawful "to congregate and assemble" in order to "crowd, obstruct, or incommode the free use of any such street, avenue, alley, road, highway, or any of the foot pavements thereof, or the free entrance into any public or private building or inclosure."[1] *See* Act of July 8, 1898, ch. 638, 30 Stat. 723; *see also* Act of June 29, 1953, ch. 159, 67 Stat. at 97-98.   Since the beginning, it has focused on preserving the public order and minimizing the risk of public inconvenience, rather than punishing conduct that causes direct or immediate injury.   *Cf. Morissette v. United States*, 342 U.S. 246, 254-56 & n.14 (1952).

Both this court and the District of Columbia Court of Appeals held that the predecessor law applied only to groups

---

[1] In full, it stated that "[i]t shall not be lawful for any person or persons within the District of Columbia to congregate and assemble in any street, avenue, alley, road, or highway, or in or around any public building or inclosure, or any park or reservation, or at the entrance of any private building or inclosure, and [(a)] engage in loud and boisterous talking or other disorderly conduct, or [(b)] to insult or make rude or obscene gestures or comments or observations on persons passing by, or in their hearing, or [(c)] to crowd, obstruct, or incommode the free use of any such street, avenue, alley, road, highway, or any of the foot pavements thereof, or the free entrance into any public or private building or inclosure."   Act of July 8, 1898, ch. 638, 30 Stat. 723.

of three or more people who had assembled for the purpose of crowding, obstructing, or incommoding, reasoning that the statute incorporated the common-law definition of unlawful assembly. *Kinoy v. District of Columbia*, 400 F.2d 761, 766, 769-70 (D.C. Cir. 1968); *see also Odum v. District of Columbia*, 565 A.2d 302, 303-04 (D.C. 1989) (invalidating the conviction of a lone individual's obstruction of truck's entrance to a construction site). And the District of Columbia Court of Appeals long held that that law did not prohibit inadvertent conduct, noting that "[i]t would hardly be contended . . . that if defendants had met on one of the spacious sidewalks of Pennsylvania [A]venue to conduct a peaceable conversation, though in a degree inconveniencing pedestrians, they would be guilty, under the statute, of crowding and obstructing the free use of the walk." *Hunter v. District of Columbia*, 47 App. D.C. 406, 409 (1918).

In some cases, the District of Columbia Court of Appeals framed its approach as a requirement that the forbidden conduct—"crowd[ing], obstruct[ing], or incommod[ing]" the use of public spaces, for example, or loud or boisterous talking—threaten a breach of the peace. *See Adams v. United States*, 256 A.2d 563, 564-65 (D.C. 1969). The court feared that, without that limiting construction, the statute could "allow punishment of the members of a group of sightseers, tourists, or school children, who might innocently congregate and assemble on a public street in such a manner as to crowd, obstruct, or incommode" others' use. *Adams*, 256 A.2d at 564-65; *see Williams v. District of Columbia*, 419 F.2d 638, 642 (D.C. Cir. 1969) (en banc). Consistent with that concern, the District of Columbia Court of Appeals did not require a showing that a breach of the peace had been threatened when "appellants' purpose to impede entry was adequately shown"—as it held was the case when a group of people laid down in front of the entrance to a congressional building to

protest the Iraq War. *Tetaz v. District of Columbia*, 976 A.2d 907, 910 (D.C. 2009).

In 2011, the District of Columbia Council amended the anti-obstructing statute to essentially its current form. The provision is no longer limited to groups of people who "congregate and assemble" for an unlawful purpose, nor does it require the government to prove any threat to public peace. *Duffee v. District of Columbia*, 93 A.3d 1273, 1277 (D.C. 2014). The law instead requires an officer who (1) observes a person crowding, obstructing, or incommoding another's use of a way or passage to (2) direct the obstructer to move on; it authorizes arrest only if the person disobeys the officer's directive. *See* D.C. Code § 22-1307(a)(2). The Council added the "move-on" order prerequisite to "prevent[] the arrest of individuals who are not intentionally trying to obstruct the passage of others and are prepared to alter their conduct when instructed to do so." *See* Joint Appendix (J.A.) 123 (Council for Court Excellence, Disorderly Conduct Arrest Project Subcommittee, Revising the District of Columbia Disorderly Conduct Statutes: A Report and Proposed Legislation). The Council thought that limitation would "eliminate[] any problems in proving the improper intent of a person who persists in blocking after a warning to desist." *Id.*

## B.   Factual Background

Alex Dennis, Daryl Agnew, and Rayneka Williamson were each arrested in unrelated incidents for violating the anti-obstructing statute. Each case was eventually dismissed for want of prosecution. The three arrestees then challenged the anti-obstructing statute as unconstitutionally vague on its face. On our *de novo* review of the order granting the District's motion to dismiss, we assume the truth of all of plaintiffs' plausibly pleaded allegations, and draw all reasonable

inferences in their favor. *Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001). The facts described here are drawn from the complaint.

The police arrested Mr. Dennis on the evening before Thanksgiving in 2014 in Southeast D.C. He had stepped outside of his home to get some air and was standing on a ramp near his apartment building when a police car drove by. The ramp is wide enough for more than one person to pass abreast, and no one was seeking to come or go from that entrance at the time. A police officer, yelling from the passing squad car, directed Dennis to leave. Dennis objected that he need not move from his own home, and the officer arrested him.

On Christmas Eve of 2014, the same police officer arrested Mr. Agnew a few doors down from Mr. Dennis' apartment. Agnew was standing with his daughter's mother on the stoop of her building, leaving space for other people to pass. Indeed, "many people were in fact coming and going around them because it was Christmas eve." J.A. 33. The officer drove up and yelled at them to leave. Agnew responded that he had come outside to smoke so as not to irritate his daughter's asthma, that her mother lived there, and that they had every right to be there, but the officer again yelled at them to leave. When Agnew refused, the officer arrested him. Both Dennis' and Agnew's police reports cited them for "standing in a manner that would cause a citizen or citizens trying to utilize the walkway to deviate from their path of walking." J.A. 37.

The police arrested Ms. Williamson in February of 2015 in a commercial area of Southeast D.C. She was on the sidewalk in front of a business when an officer told her to move because she was "disrupting the smooth flow of pedestrian traffic." J.A. 38. No one was trying to walk on that sidewalk at the time, and the way was clear for pedestrians to come and

go. Williamson objected that she was doing nothing wrong. She did not leave in response to the officer's directive, but continued to allow other people in the area "to have free movement." J.A. 39. The officer returned a half hour later and arrested her, stating in his report that "he observed pedestrians having to maneuver around her to get by on the sidewalk," and that "merchants were complaining about her in the area." *Id.*

## C. Procedural Background

Agnew filed this case in federal court in 2015, claiming false arrest and unlawful prosecution on the ground that the anti-obstructing statute is unconstitutionally vague and overbroad. During the next six months, Agnew amended the complaint twice to narrow his claims and add plaintiffs Dennis and Williamson. When the District moved to dismiss the second amended complaint, the court permitted the plaintiffs to further amend to remove allegations relating to dismissed claims and to "clarif[y] that [their] only claim is that the District's 'incommoding' statute is facially unconstitutional under the second prong of the vagueness doctrine, the arbitrary and discriminatory enforcement prong." *Agnew v. District of Columbia*, 263 F. Supp. 3d 89, 91 (D.D.C. 2017); *see also* J.A. 20 (Sept. 6, 2016 Order).

The operative complaint presses a single claim under 42 U.S.C. § 1983 against the District, challenging the plaintiffs' arrests and prosecutions under a statute they contend is unconstitutionally vague on its face for failure to guide enforcement discretion. The plaintiffs seek individualized damages and injunctive relief, but tie those requests to the asserted facial invalidity of the statute rather than, for example, any claim that, even if the statute is facially valid, the way it

was applied to them was nonetheless unconstitutional. *See* Appellants' Br. 16.

The district court granted the District's motion to dismiss the plaintiffs' facial challenge, holding that the anti-obstructing statute does not encourage arbitrary and discriminatory enforcement. The court held that the statute is not standardless; contrary to the plaintiffs' principal contention, violation of the anti-obstructing statute "does not depend upon an element that can vary with the eye of the beholder." *Agnew*, 263 F. Supp. 3d at 97. The court recognized that although the term "incommode" was arguably unclear on its own, "its presence in the series, 'to crowd, obstruct, or incommode[,]'" clarified its meaning. *Id.* at 98 n.5.

## ANALYSIS

The Due Process Clause protects individuals from laws that are so vague that they cannot be understood with reasonable consistency—whether by the people who must obey the law or the officials charged with applying it. A law may be unconstitutionally vague either because it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits," or because it "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement," or both. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *accord ANSWER v. District of Columbia*, 846 F.3d 391, 409 (D.C. Cir. 2017). The plaintiffs challenge the anti-obstructing statute as vague only for the second reason. They say it fails to define what it means to "crowd, obstruct, or incommode" the use of the specified

ways and spaces with enough clarity to prevent arbitrary or discriminatory enforcement.

A law invites arbitrary and discriminatory enforcement when "there are no standards governing the exercise of the discretion" it grants. *Papachristou*, 405 U.S. at 170. This category includes laws whose application turns on subjective judgments or preferences either of officers or of third parties. In *Morales*, for example, the Court invalidated a Chicago ordinance that forbade "criminal street gang members" from "loitering" in any public place. 527 U.S. at 45-47, 60. The ordinance's definition of loitering—"remain[ing] in any one place with no apparent purpose"—was unconstitutionally vague because it left to the unguided judgment of the police what constituted an "apparent purpose." *Id.* at 60-62. Similarly, in *Kolender v. Lawson*, 461 U.S. 352 (1983), the Court invalidated a statute that prohibited loitering or wandering without "credible and reliable identification" because the police had unbridled discretion in the absence of any definition of what kind of identification counted as "reliable" or "credible." *Id.* at 358. And in *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), the Court struck down a loitering ordinance triggered by public lingering that was "annoying" to passersby. *Id.* at 612, 614.

A law may, however, require law enforcement officers to use their discretion without being unconstitutionally vague. Enforcing criminal laws necessarily "requires the exercise of some degree of police judgment." *Grayned v. Rockford*, 408 U.S. 104, 114 (1972). A valid statute may be "marked by 'flexibility and reasonable breadth, rather than meticulous specificity.'" *Id.* at 110 (quoting *Esteban v. Cent. Mo. State Coll.*, 415 F.2d 1077, 1088 (8th Cir. 1969) (Blackmun, J.)). For example, in *United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017), we upheld a statute that forbade "mak[ing] a

harangue or oration . . . in the Supreme Court Building," because we thought it apparent that the statutory terms were "meant to cover any form of public speeches that tend to disrupt the Supreme Court's operations." *Id.* at 1104, 1109. Thus, "if the general class of offenses to which [a] statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise." *United States v. Harriss*, 347 U.S. 612, 618 (1954).

**A. The anti-obstructing statute is not unconstitutionally vague on its face.**

Because it is readily apparent that the terms "to crowd, obstruct, or incommode" the use of public ways mean to block or hinder other people's ability to pass through or use a common space, we hold that the anti-obstructing statute is not unconstitutionally vague on its face. Indeed, the Supreme Court has rejected vagueness challenges to similar laws. In *Shuttlesworth*, the Court upheld an Alabama law that made it a crime to "stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on," 382 U.S. at 88, provided the government had shown that, before the officer's request to move on, the accused had "obstruct[ed] free passage," *id.* at 91. And in *Cameron v. Johnson*, the Court upheld a Mississippi law that prohibited "engag[ing] in picketing or mass demonstrations in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from" public buildings or "with free use of public streets, sidewalks, or other public ways adjacent or contiguous thereto." 390 U.S. 611, 612 n.1, 615 (1968). "The terms 'obstruct' and 'unreasonably interfere' plainly require no guess[ing] at [their] meaning," the Court concluded. *Id.* at 616 (internal quotation marks omitted) (alterations in original). To the contrary, the Mississippi law was "a precise

and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be . . . proscribed." *Id.* (quoting *Edwards v. South Carolina*, 372 U.S. 229, 236 (1963)).

The plaintiffs here argue that both "crowd" and "incommode" are vague. They contend that the District of Columbia Court of Appeals has already held that "crowd" is vague. Not so. In the case that the plaintiffs cite, it was the statutory use of "unnecessarily crowding"—a phrase not present here—that the court thought "ambiguous" in isolation. *In re A.B.*, 395 A.2d 59, 62 n.3 (D.C. 1978). The court nonetheless rejected the vagueness challenge because the phrase's meaning was clear as it appeared in the statute alongside prohibitions on "jostling against" and "placing a hand in proximity of" someone else's handbag. *Id.* at 61, 62 n.3. The same kind of contextual reading validates the law challenged here.

The statute's use of the word "incommode" also does not render it vague; the three words read together in context are plainly concerned with impediment or hinderance. "Incommode" on its own is admittedly less clear than "crowd" or "obstruct." As the district court recognized, "incommode" has both a subjective meaning—"[t]o subject to inconvenience or discomfort; to trouble, annoy, molest, embarrass, inconvenience"—and an objective meaning—"to hinder, impede, obstruct (an action, etc.)." *Incommode*, Oxford English Dictionary, www.oed.com/view/Entry/93672; *see Agnew*, 263 F. Supp. 3d at 98 & n.5. But the statute's grouping of "incommode" together with "crowd" and "obstruct" helps to sharpen the way the drafters were using it. Under the canon of *noscitur a sociis*, a word is generally known by the company it keeps. *Bronstein*, 849 F.3d at 1108. To crowd is defined as "[t]o press, push, thrust, shove" or "[t]o

press toward a common centre, to gather or congregate closely so as to press upon one another." *Crowd*, Oxford English Dictionary, http://www.oed.com/view/Entry/45035. To obstruct is "[t]o block or impede passage along or through (an opening, thoroughfare, waterway, etc.); to place or be an obstacle in; to render impassable or difficult of passage." *Obstruct*, Oxford English Dictionary, http://www.oed.com/view/Entry/129983. Both "crowd" and "obstruct" refer to observable blockages of otherwise open places. In this context, it is plain that "incommode" covers similar conduct.

The statute is not impermissibly vague just because the term "incommode" "may not roll off the average person's tongue today," and does "not mean the same thing to all people, all the time." *See Bronstein*, 849 F.3d at 1107-08 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). The meaning of a statutory term need not be immediately obvious to an average person; indeed, "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Id.* at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975)). Standards that require study or interpretation are not thereby rendered vague. Rather, "when the vagueness doctrine assesses a legal term's meaning to 'ordinary people,' it is assessing meaning with the elementary rule of statutory interpretation" that a word is understood by its common meaning, *id.* at 1108, even if the word itself is no longer in everyday use.

Our understanding of the statute also comports with the surplusage canon's directive that a statute not be interpreted in a way that renders any part of it superfluous. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006). Each of the three terms makes a distinct contribution

to the prohibition of pedestrians' blocking—whether it be by one person alone "obstructing," by "crowding" together with others, or by otherwise "incommoding" the use of the place by, for example, spraying a garden hose across where people are trying to walk.   That the terms also substantially overlap does not contravene the surplusage canon, which must "be applied with the statutory context in mind"; after all, "sometimes drafters *do* repeat themselves." *Bronstein*, 849 F.3d at 1110 (alterations and internal quotations omitted); *accord Arlington Cent.*, 548 U.S. at 299 n.1.   The readily discernible meaning of the words is apparent in the way that they "converge upon [certain] behavior" and so are useful as descriptors of "the 'core' behavior to which the statute may constitutionally be applied." *Bronstein*, 849 F.3d at 1108 (quoting *United States v. Poindexter*, 951 F.2d 369, 385-86 (D.C. Cir. 1991)) (alterations in original).

The statute's origins support reading "crowd, obstruct, or incommode" as mutually reinforcing terms that together reach the kinds of blocking the Council deemed problematic.   The phrase was not newly selected in 2011, but was retained from the predecessor statutes to promote consistency and preserve relevant case law.   *See* J.A. 53-54 (D.C. Council, Committee on Public Safety and the Judiciary, Report on Bill 18-425). The plaintiffs contend that the Council's decision not to substitute the word "block" for the three retained terms shows that it eschewed the very meaning the District now advances so as to keep in place an impermissibly amorphous and unbounded formulation.   We instead see the Council's choice as favoring coverage and a degree of continuity without loss of clarity.

The District of Columbia Council's objective in proscribing "crowd[ing], obstruct[ing], or incommod[ing]" further confirms the statute's meaning.   The challenged law

"is meant to give police the power to defuse a situation that disturbs the public." J.A. 50 (D.C. Council, Committee on Public Safety and the Judiciary, Report on Bill 18-425) (quoting Citizen Complaint Review Board, Report and Recommendation on Disorderly Conduct Arrests Made by Metropolitan Police Department Officers). The point of doing so was to regulate conduct that impedes the public's shared use of common public spaces. The provision enables the police to intervene before members of the public resort to self-help to clear impediments. The statute does not apply to minor inconveniences or merely subjective annoyance, but only to observed obstacles or blockages. The objective meaning of the phrase "crowd, obstruct, or incommode" serves that purpose.

Indeed, the anti-obstructing statute does exactly what the Supreme Court deemed permissible in *Coates*. The *Coates* Court invalidated as facially vague a Cincinnati ordinance that prohibited "three or more persons" from "assembl[ing] . . . on any of the sidewalks . . . and there conducting themselves in a manner annoying to persons passing by." 402 U.S. at 611, 614. But "[c]onduct that annoys some people does not annoy others." *Id.* at 614. The fact that the law hinged on the term "annoying" made it defective "not in the sense that it requires [people] to conform [their] conduct to an imprecise but comprehensible normative standard but rather in the sense that no standard of conduct is specified at all." *Id.* The Court specified, however, that Cincinnati could "prevent people from blocking sidewalks [or] obstructing traffic," provided it did so "through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited." 402 U.S. at 614. That is exactly what the

District's anti-obstructing statute does: it constrains a specific, objectively defined and observable behavior.

The anti-obstructing statute does not punish conduct that has no effect on other members of the public; it is violated only by actual or imminent obstruction of another person. That is because the provision applies only to crowding, obstructing, and incommoding "the use of" the specified places by other people. Unless there is someone else who is trying to use the same space and whose use is obstructed, the statute by its own terms is not violated and no "move on" directive is warranted.

For similar reasons, ordinary, quotidian use of public spaces in the manner in which they were intended to be used does not violate the statute. When one person walks on a sidewalk, drives down a street, picnics in a park, or sits and rests awhile on a plaza's bench, she will necessarily prevent the simultaneous use by anyone else of the precise space she occupies—in some sense blocking another's use. But such conduct, and the bare physical displacement of others that it inevitably entails, does not alone qualify as "obstruct[ing], crowd[ing] or incommod[ing] the use" of those places. Rather, the statute forbids behavior that impedes the people's common use of public spaces. The statutory text, read with a dose of common sense, confirms that a violation occurs only when a person effectively appropriates more than his fair share of a public area or walk, in conflict with the prerogatives of other people also seeking to use that space.

Plaintiffs err in asserting that the statute carries criminal consequences for inadvertent conduct. No one is subject to arrest under the anti-obstructing statute until an officer has probable cause to believe that a person has in fact "crowd[ed], obstruct[ed] or incommod[ed]" the use of public space and "continue[d] or resume[d] the crowding, obstructing, or

incommoding after being instructed by a law enforcement officer to cease." D.C. Code § 22-1307(a)(2). Even when an officer observes someone "crowd[ing], obstruct[ing], or incommod[ing]" and warns him to stop doing so, the person cannot be arrested unless he ignores the officer's directive and decides to keep obstructing. The statute thus does not criminally punish those who accidentally block the use of a public space.

The plaintiffs' other arguments—specifically, that the statute turns on the subjective responses of other members of the public, that the move-on provision magnifies police discretion in the absence of a *mens rea* requirement, and that the statute is discriminatorily enforced—do not persuade us that the law is void for vagueness.

According to the plaintiffs, the statute is vague because it "bases criminality on the reaction of unknown others to the presence of a person on the public sidewalks, rather than on the accused's conduct." Appellants' Br. 43-44. They point in particular to notations in the plaintiffs' arrest reports asserting that anyone trying to use the walkway would have needed to "deviate from their path of walking" due to the reported obstructions. J.A. 33, 36-37 (complaint); *see also* J.A. 39 (complaint). Reliance on the reaction of others, the plaintiffs say, has led courts to invalidate other laws as vague, and requires us to do so here. *See* Appellants' Br. 44 (citing *Coates*, 402 U.S. at 613, *In re A.B.*, 395 A.2d at 62 n.3, and *Seattle v. Webster*, 802 P.2d 1333, 1338-39 (Wash. 1990)).

The plaintiffs misread those cases. The Supreme Court invalidated the loitering ordinance in *Coates* on vagueness grounds because its violation turned wholly on police assessments of the subjective annoyance of other members of the public. 402 U.S. at 611-12, 614. The Court has not,

however, voided a statute just because its violation may be evidenced by observed third-party conduct in response to the acts prohibited. The cases that the plaintiffs invoke do not say otherwise. Indeed, *Webster*, which does not in any event bind us, is directly contrary to the plaintiffs' position. The Supreme Court of Washington held that the Seattle ordinance in question, which prohibited "intentionally . . . obstruct[ing] pedestrian or vehicular traffic," was not vague. *Webster*, 802 P.2d at 1337-39. The ordinance did not "base criminality on the reaction of others"—instead, "it define[d] the proscribed conduct solely in reference to the person interfering with the flow of pedestrian or vehicular traffic." *Id.* at 1339. Police officers need not guess at or make projections about what is in the minds of passersby in order to observe, for example, pedestrians walking in the street to get past a person lying across the width of a busy downtown sidewalk. It would be appropriate in that situation to rely on the observation that people in fact had to "deviate from their path of walking."

The plaintiffs also argue that the move-on provision magnifies police discretion, and that the statute is vague due to the lack of a *mens rea* requirement. They correctly note that the move-on provision itself gives the officer no added guidance for determining "whether an order should be made in the first place." Appellants' Br. 48. Indeed, the *Morales* Court made the same point, observing that the fact that the ordinance at issue there did "not permit an arrest until after a dispersal order has been disobeyed [did] not provide any guidance to the officer deciding whether such an order should issue." 527 U.S. at 62. If the statutory description of the blockages to which the statute applies were unconstitutionally vague, the move-on provision could not cure—and might well

compound—its enforcement-discretion defect. *See Morales*, 527 U.S. at 62; *Shuttlesworth*, 382 U.S. at 90.

We accordingly reject the District of Columbia's contention that the requirement of a move-on order could "mitigate" vagueness in the description of the proscribed conduct. *See* Appellee's Br. 32. Contrary to the District's argument, *id.* at 33, vagueness of a conduct prohibition cannot be cured by the intentionality of an individual's refusal to cease that conduct once instructed to do so: If the statute failed to define what it barred, a move-on order would be no more than an exercise of the officer's unguided discretion—perhaps trained on conduct that the legislators never sought to (and perhaps constitutionally could not) reach. A person's knowing failure to obey such an order could do nothing either to cure the officer's lawless discretion or to establish the individual's culpability. But here we do not rely on any putative curative effect of a suspect's intent in the face of statutory vagueness, because the statute is not vague. A violation of the prohibition on crowding, obstructing, or incommoding is a prerequisite to a move-on order, so it cannot be, as plaintiffs claim, that "the mere refusal to move on after a police officer's [directive to] move or 'cease' *is* the offense." Appellants' Br. 48.

The plaintiffs also see vagueness in the statute's failure to specify how far a person must go when told to move on, or for how long. They argue that the move-on provision essentially empowers the police to banish people from public spaces. But "how far" and "how long" are self-defining under the statute: Individuals need not vacate the public space altogether, they must simply stop blocking the use of the way or place at issue.

Because the statute vests no banishment power in police, it can suffer no defect on that account.

As further evidence that the law is vague, the plaintiffs point to their allegations that the anti-obstructing statute is being enforced in a racially discriminatory, harassing manner. The facts of the plaintiffs' arrests as they allege them are troubling. The conduct they describe would appear to fall outside the scope of the statute, correctly understood. But the plaintiffs here do not bring a claim of racially discriminatory prosecution. *Cf. United States v. Armstrong*, 517 U.S. 456, 463-66 (1996). And identified instances of a statute's misapplication do not tell us whether the law is unconstitutional in every application. *See City of Houston v. Hill*, 482 U.S. 451, 458 (1987); *United States v. Salerno*, 481 U.S. 739, 745 (1987). It may be that similar allegations could bolster an as-applied challenge. They do not, however, support the sole claim at issue here.

We note that, even as the plaintiffs have expressly limited their case to a facial challenge, they have described their claim to us as "elud[ing] ready classification" as either facial or as-applied. Appellants' Br. 16 (quoting *Hodge v. Talkin*, 799 F.3d 1145, 1156 (D.C. Cir. 2015)). They contend that, if they succeeded in facially invalidating the statute, they would also be entitled to damages and individualized declaratory and injunctive relief. *Id*. As the district court incisively explained and plaintiffs themselves acknowledge, however, the predicate to the claims for individualized relief is facial invalidity. Because the statute is not unconstitutionally vague

on its face, we need not separately address the requested individualized relief.

### B. The anti-obstructing statute is not defective for lack of a *mens rea* requirement.

Finally, we reject the plaintiffs' argument—independent of their vagueness challenge—that the anti-obstructing statute is invalid under the Due Process Clause for want of a scienter requirement. While the statute does not include any express *mens rea* requirement for the initial obstructing, the move-on provision (when applied to conduct that violates the ban against crowding, obstructing or incommoding) ensures that anyone arrested for failing to move on has at least a reckless state of mind. In other words, the statute does not specify that only people who "crowd, obstruct, or incommode" with a certain *mens rea* may be directed to move on but, because any arrest or other criminal consequence of the anti-obstructing statute can only follow the arrestee's receipt and disobedience of a well-founded "move on" directive, those weightier consequences are necessarily accompanied by some proof of violation with *mens rea*. Indeed, it was for this very purpose that the District of Columbia Council added the move-on provision when it amended the anti-obstructing statute. *See* J.A. 123. Rather than requiring proof of a breach of the peace to protect individuals against arrest for inadvertent conduct, the current version of the statute employs the move-on provision to achieve the same goal in a more focused way.

Even if the statute lacked a scienter requirement, plaintiffs' assertion that it would thereby be invalid under *Elonis v. United States*, 135 S. Ct. 2001 (2015), is unfounded. Although "the 'general rule' is that a guilty mind is 'a necessary element in the indictment and proof of every crime,'" *id.* at 2009 (quoting *United States v. Balint*, 258 U.S.

250, 251 (1922)), "there are exceptions." *Id.* In particular, "public welfare offenses" like public obstruction, which are aimed principally at maintaining the general social order rather than punishing wrongdoers, sometimes lack a scienter requirement. *See Morissette*, 342 U.S. at 254-56 & n.14. In any event, plaintiffs' claim that a crime without a scienter requirement is unconstitutional under the Due Process Clause is inapposite here. As against an inadvertent obstructor, the statute only authorizes a nonpunitive police order to "move on" and cease obstructing; to be subjected to arrest or other criminal consequence, a person must have flouted a well-founded move-on directive. The statute thereby avoids criminalizing unintentional violations.

*       *       *

For the foregoing reasons, we affirm the district court's dismissal of the complaint.

*So ordered.*